## TRI-STATE INSURANCE COMPANY *v.* JOHN McCRAW, D/B/A/ O & M LUMBER COMPANY

5-5995            483 S.W. 2d 212

### Opinion delivered July 24, 1972

*Daily, West, Core & Coffman,* for appellant.

*Wayland A. Parker, Donald Poe* and *Donald Goodner,* for appellee.

J. FRED JONES, Justice. This is an appeal by Tri-State Insurance Company from a judgment of the Scott County Circuit Court in favor of the plaintiff-appellee, John Mc-Craw, d/b/a O & M Lumber Company. The suit was filed by McCraw on an insurance policy issued by Tri-State insuring a truck and trailer belonging to McCraw against loss in damage by collision or upset.

On January 12, 1971, McCraw filed his complaint alleging that on or about September 1, 1970, he sustained damages and losses to his 1964 Mack truck-tractor and 1966 Delta Float semitrailer by collision or upset within the coverage provisions of his insurance policy issued by Tri-State. He alleged damage to his truck in the amount of $8,425 and to the semitrailer in the amount of $1,560. The complaint alleged post-wreck salvage value of the

truck in the amount of $1,075 and salvage value to the semitrailer in the amount of $940. The complaint alleged that demand had been made upon Tri-State and that Tri-State denied liability under its policy.

On March 15, 1971, Tri-State filed its answer admitting issuance and coverage under the policy but alleging that the benefits available to the plaintiff under the provisions of the policy amounted to $5,250 for the damage to the truck-tractor and $770.68 for the damage to the semitrailer. Tri-State alleged that it had offered these amounts to Mr. McCraw in settlement of his claims and in the alternative had offered to have the trailer repaired in such manner as to restore it to its full market value which it had immediately prior to the accident, less $250 deductible as provided in the policy, but that these offers were refused by McCraw. By amendment to its answer filed on October 27, 1971, Tri-State alleged that during the month of October, 1970, it offered to furnish McCraw a replacement substitute truck-tractor which was then available; that the substitute tractor was still under warranty and was in better condition than was the insured vehicle before it was wrecked; that the proposed replacement vehicle was then in Joplin, Missouri, and that Tri-State offered to pay McCraw $200 for the expense of transporting the vehicle to Waldron, Arkansas. Tri-State alleged that its offers were made in an effort to fully perform and carry out its obligations under the terms of its contract; that all its offers were refused and that its full performance under its contract was prevented by McCraw's arbitrary refusal to accept Tri-State's tendered performance.

A jury trial resulted in a verdict in favor of McCraw for $8,708. Judgment was entered for $8,208 which was the total amount of the jury verdict less $500 deductible under the provisions of the policy. On appeal to this court Tri-State relies on the following points for reversal:

> "The court erred in refusing to permit appellant to prove its alternative offers to appellee and/or his attorney to:
>
> (a) Pay the amount of the loss on the trailer in money;

(b) Repair the trailer to its value prior to the damage;

(c) Pay the amount of the loss on the truck in money;

(d) Replace the truck with 'other of like kind and quality,'

As appellant had a right to do under the policy and as appellant had pleaded in its answer (and amendments) that it had done."

The actual controversy in this case concerns the rights and liabilities of the parties to an insurance contract under the provisions of the contract. The primary question on this appeal does not pertain so much to the evidence of offers rejected as it does to the evidence of liability incurred. The pertinent provisions of the insurance contract in this case pertain to Coverage "E" as designated in the policy. Coverage "E" pertains to collision or upset and under it Tri-State agreed:

"To pay for direct and accidental loss of or damage to the automobile, hereinafter called loss, caused by collision of the automobile with another object or by upset of the automobile, but only for the amount of each such loss in excess of the deductible amount, if any, stated in the declarations as applicable hereto."

The policy also provided as follows:

"The insurance afforded is only with respect to such and so many of the following coverages as are indicated by a specific premium charge or charges. *The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of the policy having reference thereto:*

\*     \*     \*

E.    Collision—Actual cash value less $250 deductible." (Emphasis added).

Coverage "E" is again referred to under "Condition" No. 14 of the policy as follows:

"Limit of Liability; Settlement Options; No Abandonment—Coverages D. E. and F: The limit of the company's liability for loss shall not exceed either (1) the actual cash value of the automobile, or if the loss is of a part thereof the actual cash value of such part, at time of loss or (2) what it would then cost to repair or replace the automobile or such part thereof with other of like kind and quality, with deduction for depreciation, or (3) the applicable limit of liability stated in the declarations.

*The company may pay for the loss in money or may repair or replace the automobile* or such part thereof, as aforesaid, or may return any stolen property with payment for any resultant damage thereto at any time before the loss is paid or the property is so replaced, or may take all or such part of the automobile at the agreed or appraised value but there shall be no abandonment to the company." (Emphasis added).

Mr. McCraw testified that he purchased the truck-tractor in 1964 for between $20,000 and $21,000 and purchased the trailer in 1966 for $3,850. He testified that he had approximately $5,000 worth of repairs done on the truck shortly before it was wrecked. He testified that the fair market value of his truck prior to the accident was not less than $9,500, and the fair market value of his trailer prior to the accident was $2,500. He testified that after the accident the truck-tractor was worth around $1,000, and his semitrailer was worth about $900. He testified that he had purchased and paid for the insurance policy from Tri-State and was only asking the jury to require Tri-State to live up to its end of the bargain and to pay him the amount of damages he sustained to his vehicles in the amount of $9,985. He testified that he was asking a money judgment for the damage to his vehicles and that he intended to keep the damaged vehicles for salvage. Mr. McCraw testified that he still owed approximately $8,500 on the purchase price and former repairs of the two pieces of equipment.

Mr. Carl Corley, president and general manager of the Crouch Equipment Company, testified as an expert that

the truck-tractor was worth $9,500 prior to the wreck and the trailer was worth $2,500. He testified that after the wreck the tractor was purely salvage and worth approximately $750. He said that the value of the trailer after the wreck was $500. Mr. Corley testified that there was still an indebtedness of between $8,500 and $8,750 due the Crouch Equipment Company for which it had a security interest in the property involved and for which it was also insured under McCraw's policy with Tri-State.

Mr. Doek Lipe, a material damage appraiser employed by the Appraisal Service of Arkansas, testified as an expert for Tri-State. He testified that he examined the equipment involved in this case; that in his opinion the trailer was capable of being repaired and that he estimated that such repairs to the trailer would cost $1,020.68 to restore it to its original condition and value prior to the accident. He testified that in his opinion the fair market value of the trailer prior to the accident was $2,580 and that its value immediately after the accident was $1,559.32 which constituted its fair market value in its damaged condition. This witness testified that when he examined the truck-tractor following the wreck, he concluded that the cost of its repairs would exceed its value, so he considered the vehicle a total loss because of the damage. He estimated the cost of repairing the truck-tractor at $8,454.91. He testified that in his opinion the truck was worth $4,590 immediately prior to the accident and that its salvage value was about $1,000 after the accident.

Mr. Richard L. Williams, a claims adjuster for Tri-State, testified that he employed Mr. Lipe to make the estimates to which Mr. Lipe testified. He testified that Mr. Lipe conveyed the results of his inspection, appraisals, estimates and opinions to him and he in turn conveyed the information to Mr. McCraw. He testified that Mr. Lipe had advised him that the trailer could be repaired for $1,020.68 and that the tractor was a total loss.

Mr. D. J. Wharton, a professional insurance claims man and expert appraiser employed by Insurance Services of Kansas City, Missouri, testified that he travels over the entire United States in estimating damages to large

diesel tractor-rigs. He said that his usual duties consist of evaluating damages and settling claims on truck-tractors and trailers as well as cargo. He said that this work involves the repair as well as cost of replacement of damaged vehicles and parts, and that approximately 50% of his business involves replacement. He testified that the procedure he follows in replacing a unit is to establish its value by like kind and quality as near as practicable and then locating a comparable unit. He said that the comparable unit is then made available and it is optional with the owner whether he accepts the comparable unit or desires a cash settlement to go into a later model. This witness testified that on October 5, 1970, he received an assignment from Tri-State in connection with the loss involved in this case and that he followed his usual procedure. He testified he was advised that Mr. McCraw was represented by counsel and that he made several attempts to get in touch with Mr. McCraw's attorney before finally doing so and arranging an appointment to discuss the matter on October 13, 1970. He testified that he inspected the damaged equipment in Waldron and concluded that the fair market value of the trailer prior to the accident would have been between $2,200 and $2,500, and that the fair market value of the truck-tractor prior to the accident would have been $5,350. He said that the fair market value of the truck following the accident was $1,675. He also testified that it would cost in excess of $8,000 to repair the truck-tractor and that this amount was in excess of its actual value or the value of another truck of similar design and condition. This witness was then asked a question followed by a comment from the court as follows:

"Q. Did you make an effort to obtain or locate a unit of like kind and quality?

THE COURT: No, sir, that isn't admissible."

At conference in chambers, out of the hearing of the jury, Tri-State offered to prove by Mr. Wharton that Tri-State had located a Mack truck in Joplin, Missouri, of equal or better quality and value than the insured truck prior to damage; that the truck in Joplin could be obtained for a quoted price of $5,350 f. o. b. Joplin, and the expense of

bringing the truck to waldron, Arkansas, would be approximately $150.

Tri-State then proffered the testimony of Mr. Wharton to the effect that Wharton had a limited discussion with Mr. Poe and Mr. McCraw in Mr. Poe's office in Waldron, at which time he offered to replace the insured truck-tractor with one of higher quality and value which was available in Joplin, Missouri, for $5,350. This testimony was held inadmissible by the trial court.

Mr. McCraw was claiming no penalty because of Tri-State's failure to timely perform under its contract in this case so the trial court did not err in excluding the evidence as to offers made by Tri-State and rejected by McCraw. The specific problem in this case, however, is pointed up in the record by the following colloquy between the attorneys and the court.

"THE COURT: I am holding that the measure of damage in this case is the difference between the value of the vehicle and trailer immediately before the accident, and the value immediately after the accident, and the difference between those figures is what the jury will be instructed on. Mr. Core takes the position in representing the defendant they had a right to replace the trunk under the terms of the policy with a similar truck of like kind and quality at a lesser sum that the before and after value.

MR. POE: He never did offer that proposition, either to me or to Mr. McCraw.

THE COURT: He's not saying they did. This is a matter of law, what he is questioning.

MR. POE: And they denied liability, and—

THE COURT: That's not what he's questioning. He's trying to show that the policy itself doesn't provide for damages for the before and after value—that it provides for replacement with like kind and quality —which I hold is contrary to Arkansas law."

Tri-State argues that the trial court erred in refusing to give several instructions requested by Tri-State based on the proffered testimony ruled inadmissible by the trial court. We deem it unnecessary to specifically discuss these offered instructions for the reason that they are not likely to be again offered in the same words and context at a new trial. Tri-State objected to the court's instructions Nos. 8 and 9 which appear in the record as follows:

"No. 8 When I use the expression 'fair market value,' I mean the price that the truck and trailer would bring on the open market in a sale between a seller who is willing to sell, and a buyer who is willing and able to buy after a reasonable opportunity for negotiations.

No. 9 The meaning of damages in this case is the difference in the fair market value of the truck and trailer immediately before and immediately after the occurrence. In determining the difference, you may take into consideration the reasonable cost of repairs. Whether the damage has been proved by the evidence is for you to determine.

The court then gave its instruction No. 7 as follows:

"If you decide for the plaintiff, John McCraw, d/b/a O & M Lumber Company, and against Tri-State Insurance Company, you must then fix the amount of money which will necessarily and fairly compensate him for the damages he sustained."

Following the return of the jury verdict in this case, Tri-State moved for a judgment n.o.v. in favor of McCraw in the amount of $4,925 which motion was denied by the trial court.

We are of the opinion that the trial court erred in not permitting Tri-State to submit proof to the jury as to replacement values and in not instructing the jury in connection therewith. The trial court was apparently of the impression that Tri-State was contending that its policy did not provide for the payment of damages based on the before and after value of damaged property but only pro-

vided for replacement with property of like kind and quality. We do not so constru Tri-State's contentions from the record before us. It is Tri-State's contention, as we understand it, that its top liability under the terms of its policy was limited to the actual cash value of the insured vehicles under item 8E of the contract; that it was only obligated to pay the amount of the loss in excess of the $250 deductible on each vehicle as provided under "Coverage E" of the insuring agreement, and that Tri-State had an option to pay for the loss in money or to repair or replace the damaged vehicle under Condition No. 14 of the policy.

We agree with Tri-State on this point. This case involves a suit on contract and not in tort so we are of the opinion that the amount Tri-State was obligated to pay and the amount Mr. McCraw was entitled to recieve, were dependent on the terms of the contract rather than solely on the difference in the before and after value of the vehicles. We hold, therefore, that the trial court erred in restricting the evidence to the difference in the market value of the vehicles immediately prior and immediately following the damage they sustained.

As already stated, the measure of Tri-State's contractual liability was the matter actually involved in this case rather than the true measure of damage to the insured vehicles. Under declaration No. 8 in the policy, the insurance contract provides: "the limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of the policy having reference thereto." Under coverage "E" the policy provides that the *limits* of liability shall be *"actual cash value* less $250.00 deductible." We point out that the limits of liability as above emphasized states "actual cash value" and does not state "actual value in cash." Under insuring agreements of the policy, coverage "E" is again referred to and provides payment for the direct or accidental loss of or damage to the insured vehicle caused by collision or upset, but only for the amount of each loss in excess of the deductible amounts stated in the declaration.

Condition No. 14 first restates the limits of the company's liability not to exceed "the actual cash value of the automobile. . . at the time of the loss," or "what it would

then cost to repair or replace the automobile or such part thereof with other of like kind and quality with deduction for depreciation," or "the applicable limit or liability stated in the declarations" (actual cash value less $250 deductible). All of these provisions refer to the *limits of liability* and no one suggests in this case that the provisions of the policy are conflicting or ambiguous. The second paragraph of 14 provides for options available to Tri-State in paying or satisfying the limits of its liability. This paragraph provides in very plain language:

> "The company may pay for the loss in money or may repair or replace the automobile or such part thereof . . ."

We have never held such limitations by contract invalid in Arkansas, but on the contrary have recognized them as valid. *Resolute Ins. Co.* v. *Bailey*, 221 Ark. 419, 253 S.W. 2d 771; *Resolute Ins. Co.* v. *Mize*, 221 Ark. 705, 255 S.W. 2d 682. In *Traders & General Ins. Co.* v. *Williams*, 229 Ark. 923, 319 S.W. 2d 847, we said:

> "The appellant insists that all the evidence of *value before and after the collision* was inadmissible and prejudicial; but we do not agree with such contention. The Insurance Company delivered to Williams a policy which stated in the coverage section as regards collosion, '. . .to pay for loss caused by collision to the owned automobile . . . but only for the amount of each such loss in excess of the deductible amount stated in the declarations as applicable hereto.' (The deductible amount was stated at $50.00.) So, in the light of the above quoted section, the Insurance Company was liable for all collision loss in excess of $50.00. What was the loss? Unless otherwise limited, it was the difference in value before and after the collision. But in another section of the policy the Insurance Company had limited its liability as regards collision loss to, ' . . . what it would then cost to repair or replace the property or such part thereof with other of like kind and quality. . .'

When we consider together these two sections of the policy, it is clear that Williams was entitled to show (a) his loss by the 'before and after' value rule; and then (b) to completely establish that his loss was within the limit of liability he could show the cost of repairs. There was certainly no error in allowing the evidence offered; and the instruction given by the Trial Court at the request of the defendant made the point clear."

See footnote 4 to this opinion. See also *Southern Farm Bureau Cas. Ins. Co* v. *Gaither,* 238 Ark. 50, 378 S.W. 2d 211.

We conclude, therefore, that the trial court should have permitted Tri-State to offer evidence as to the cost of replacing the damaged truck with one of like quality and should have submitted the question to the jury under proper instructions.

The judgment is reversed and this cause remanded for a new trial.