UNIGARD INSURANCE COMPANY OF SEATTLE, WASHINGTON v. LLOYD C. WISH

73-57 496 S.W. 2d 392

Opinion delivered July 9, 1973

*Barber, Henry, Thurman, McCaskill & Amsler,* for appellant.

*Guy Jones Jr., Guy H. Jones,* and *Phil Stratton,* for appellee.

CARLETON HARRIS, Chief Justice. On March 2, 1972, appellee's 1971 Chevrolet automobile received extensive damage in an automobile accident. At the time of this occurrence, appellee, Lloyd C. Wish, held a policy with appellant Unigard Insurance Company which was in full force and effect, such policy providing property damage coverage for appellee's automobile. The company offered to pay the cost of repairs less the $100.00 deductible (as set out in the policy), but Wish contended that he was due the difference between the fair market value of the automobile immediately before and immediately after the accident. Suit was accordingly instituted and tried by the court, sitting as a jury. At the conclusion of the trial, the court awarded judgment to appellee in the sum of $2,450.00, plus 6% interest until paid, plus 12% penalty, and an attorney's fee in the amount of $800.00, together with court costs. From the judgment so entered, appellant brings this appeal. For reversal, it is asserted that the trial court erred in holding that the measure of appellee's damages was the difference between the value of the car immediately before the damage occurred and the value thereof immediately after the damage occurred, and it is asserted that there was no substantial evidence to support a finding that Wish's automobile was a total loss.

Appellant relies upon the provisions in the policy entitled "Limit of Liability" which reads as follows:

"The limit of the Company's liability for loss shall not exceed the actual cash value of the property, or if the loss is of a part thereof the actual cash value of such part, at time of loss, nor what it would then cost to repair or replace the property or such part thereof with other of like kind and quality, nor, with respect to an owned automobile described in this policy, the applicable limit of liability stated in the declarations."

Also, under "Conditions", appellant mentions 'Condition No. 12' which states:

"Automobile Physical Damage Section-The Company may pay for the loss in money; or may repair or replace the damage or stolen property; or may, at any time before the loss is paid or the property is so replaced, at its expense return any stolen property to the named Insured, or at its option to the address shown in the declarations, with payment for any resultant damage thereto; or may take all or such part of the property at the agreed or appraised value but there shall be no abandonment to the Company. The Company may settle any claim for loss either with the Insured or the owner of the property."

Appellee has never contended that the cited provisions of the contract are conflicting or ambiguous, but simple contends that the measure of damages is the difference between the value of the automobile immediately before and immediately following the accident. The car was towed to Bill Dean Chevrolet Company in Conway and subsequently Mr. Dean purchased the car for $650.00. The principal damage appeared to be to the frame. Mr. Lloyd Wish testified that the insurance company offered to repair the automobile, but he stated that he was advised that it was not repairable and he thus refused to consent to repairs.[1] The son, Claude, who generally operated the car, and who was driving it at

---

[1] It developed that this information had been given to Mr. Wish by his son, who had in turn allegedly received the information from the Chevrolet company. The testimony was objected to, and of course, was inadmissible.

the time of the accident, testified that he talked with Hugh Arendall, shop foreman for Dean Chevrolet, who stated that if the car belonged to him (Arendall) he would not have it fixed. Orville F. Gwinn, an automobile salesman, testified that he was familiar with the automobile; that Lloyd Wish and his son were longtime customers, and that in his opinion, the Wish automobile had a resale value of approximately $3,975.00 at the time it was wrecked. He did not see the car after the wreck. Gwinn testified that the book value at the time of the collision was $3,275.00, but he stated that book value did not give consideration to options, nor did it consider high mileage.

William J. Dean, Chevrolet dealer, testified that the car was extensively damaged, and "in practically every instance they are worth less money after they are repaired. A used car on a used car lot that has been wrecked is just not worth as much as another car of the same kind that hasn't been wrecked." He said that his company sold the car for $900.00, having "found a man that had a car like this that was hit on the other end, and he cut them in two and made one." Mr. Dean, when asked if the car had been "totaled out", replied that he really did not know what was meant by that terminology. Though asked several questions relating to whether the car was "totaled", Mr. Dean would never make such a statement. He said he would not have repaired the car and put it up for sale to the public "mainly because of the used car reputation (of his company)."

H. E. Martin, an insurance adjuster, testified that he handled the claim for appellant company. He testified that he went to the office of the attorney for Wish but when asked if he discussed repairs with counsel, Martin replied, "I didn't have a chance. I offered, your honor, but Mr. Jones said they didn't want to repair it, they wanted it totaled." Some of the statements were hotly disputed by counsel, but it does appear that the discussion, from the standpoint of appellee related to market value. Martin testified that when he "saw we couldn't get together", he went back to Dean's, talked with the foreman and following that conversation, the estimate

was changed, the new frame and labor being removed, $100.00 to repair the frame being added, and the estimate thus reduced to $961.00; this amount, less the $100.00 deductible, was offered in settlement.

Hugh Arendall, body·shop foreman for the Dean Shop, testified that he had been doing body work for twenty-six years[2], and that he gave Mike Wish the original estimate, which was $1,366.73. He stated, however, that in his opinion, the frame could have been repaired without a new frame assembly at a cost of about $100.00. He stated that if he had performed the repairs, it was his opinion that the car would have been "as good as it was before the wreck." He said that Wish told him that he did not want the car repaired. Arendall stated that the frame was damaged in the rear, but there was no damage at all at the front and he reiterated, in response to· the question of what the car would be worth after he had fixed it, "All I could say it would be like it was before it was wrecked."

In order for the judgment which was entered against appellant to have been given, it was necessary that the circuit court find that the measure of appellee's damages was the difference between the value of his automobile immediately before and immediately following the accident rather than the cost of repairs. We think, under the terms of the policy that this finding was erroneous and cases cited by appellee are clearly distinguishable. Under the provisions found in "Limit of Liability" heretofore set out, we are of the view that this litigation is controlled by the opinion of this court in *Traders & General Insurance Company* v. *Williams,* 229 Ark. 923, 319 S.W. 2d 847. There, the "Limit of Liability" section in the policy was substantially the same as that in the instant case, and it was insisted by the insurance company that the evidence of value before and after the collision was inadmissible. We held that the evidence was admissible, but then stated:

"When we consider together these two sections of the policy, it is clear that Williams was entitled to

---

[2]When Dean was asked about the qualifications of Arendall, he replied, "He is the best."

show (a) his loss by the 'before and after' value rule; and then (b) to completely establish that *his loss was within the limit of liability* [our emphasis] he could show the cost of repairs. There was certainly no error in allowing the evidence offered, and the instruction given by the Trial Court at the request of the defendant made the point clear." [3]

In *Tri-State Insurance Company* v. *McCraw, D/B/A O & M Lumber Company,* 252 Ark. 1259, 483 S.W. 2d 212, we further stated that a property damage limitation of liability is valid and that recovery is dependent upon the terms of the contract rather than on the difference in the before and after value of the vehicle. If this figure had been equal to or less than the amount necessary to repair the car, appellee could have recovered the difference between the before and after value. But such is not the case. The estimated cost of repairs was only $961.73.[4] Of course, our finding would be different if the testimony reflected the Wish automobile to have been a total loss. But there is no evidence to that effect in the record. The only evidence on this point by appellee's witnesses was that a wrecked automobile which had been repaired was never as valuable for resale purposes as one which had not been wrecked. Not a single person testified that the car was a total loss.

[3] In a footnote, the court further stated:

"The Court also further explained to the attorneys for the Insurance Company the purport of his holding when he declared to them in the course of the instructions: 'The Court has permitted the introduction of evidence as to what the fair market value of the plaintiff's car was immediately before the collision and as to what the fair market value was immediately after the collision. The Court permitted the introduction of that evidence only for the jury's consideration in determining the company's liability under the provisions of the policy, as you have been instructed by other instructions herein. Such is not the measure of the defendant's liability.' "

[4]The original estimate by Dean Chevrolet was in the amount of $1,366.73 and there is a dispute as to whether the adjuster ever approved this figure. This estimate included a new frame and the labor to install same, but apparently after settlement negotiations between the company and appellee failed and Arendall said that the frame could be repaired, the cost of repairs was reduced by the amount necessary for a new frame and the labor, to the cost of repairing the frame on the car. Of course, even if this figure had been allowed by the court, the court's judgment would still have been erroneous.

It follows from what has been said, that the trial court erred in its conclusions, and the judgment is reversed with directions to enter a judgment for appellee in the amount of $861.73.

It is so ordered.

BYRD, J., dissents.