[No. 4265–II.   Division Two.   July 9, 1981.]

RITCHIE ALAN HORAN, ET AL, *Appellants,* v. RICHARD MARQUARDT, *as Insurance Commissioner,* ET AL, *Respondents.*

*James R. Verellen* and *Kane, Vandeberg, Hartinger & Walker,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Edward H. Southon, Assistant,* for respondents.

REED, C.J.—The facts of this case are undisputed. In 1978 the Insurance Commissioner adopted the Unfair Claims Settlement Practices Regulation, WAC 284–30–300 to –410. Included within this regulation were provisions governing certain practices regarding auto repair claims under automobile insurance policies. WAC 284–30–390. Ten plaintiffs (eight auto repair proprietors and two consumers) brought this action in Thurston County Superior Court against the Insurance Commissioner seeking a permanent injunction against implementation of portions of the regulation, specifically WAC 284–30–390(5), (6), and (7), and a declaratory judgment as to the validity of those parts of the regulation, contending that by enacting subsections 5, 6, and 7 the Insurance Commissioner exceeded his statutory authority and violated the supremacy clause of the United States Constitution. After denial of this injunction, both parties moved for summary judgment. Judge Doran, in an extensive and well reasoned memorandum opinion, granted summary judgment in favor of the Insurance Commissioner. Plaintiffs Ritchie Horan and Geraline Haynie appeal. We affirm.

Plaintiffs raise distinct, yet related, arguments as to the validity of each of the three subsections. We initially recognize, however, that in resolving a challenge to an

administrative regulation, we must indulge in a presumption of validity; the burden of overcoming this presumption is on the challenger. *Weyerhaeuser Co. v. Department of Ecology,* 86 Wn.2d 310, 545 P.2d 5 (1976). Further, our review is limited to determining whether the regulation is "reasonably consistent with the statute it purports to implement". *Weyerhaeuser,* 86 Wn.2d at 314. We note also that RCW 48.30.010(2) expressly grants to the Insurance Commissioner the authority to promulgate regulations defining methods of competition and acts or practices in the conduct of the insurance business reasonably found to be unfair or deceptive. With this in mind, we now address the validity of each subsection separately.

Subsection 5 of WAC 284–30–390 states:

> If an insurer prepares an estimate of the cost of automobile repairs, such estimate shall be itemized and shall be in an amount for which it may be reasonably expected the damage can be satisfactorily repaired. The insurer shall give a copy of the estimate to the claimant and shall, upon request, furnish to the claimant the names of repair shops convenient to the claimant that will satisfactorily complete the repairs for the estimated cost.

Plaintiffs argue that the only way insurers can comply with subsection 5's provision that the insurer provide names of repair shops that "will satisfactorily complete the repairs for the estimated cost" is to enter into agreements with certain repair shops that those shops will, sight unseen, meet the insurer's estimate. Such arrangements, contend the plaintiffs, constitute illegal price fixing agreements in violation of the federal and state antitrust laws. Consequently, plaintiffs conclude that because subsection 5 mandates such illegal agreements, the subsection violates the supremacy clause of the constitution and exceeds the authority granted to the Insurance Commissioner. *See* RCW 48.02.060, 48.30.010.

We cannot agree with plaintiffs' interpretation that subsection 5 *requires* agreements between insurers and auto repair shops. A plain reading of the subsection indi-

cates no such requirement. Nor are such agreements a prerequisite in order for the insurer to comply with the subsection; the insurer need only provide the claimant with an estimate which the insurer "reasonably expects" will repair the car. If the claimant believes the estimate is unrealistic and requests the names of repair shops, the insurer could either revise the estimate or attempt on its own to find shops that would repair the car for the estimate and give the names of those shops to the claimant. If the insurer followed this procedure, it would have complied fully with subsection 5 without entering into specific agreements with certain repair shops.[1]

The purpose of subsection 5 is reflected in the Insurance Commissioner's statement filed with the Code Reviser pursuant to RCW 34.04.045:

> This rule is intended to eliminate the complaint that a claimant may receive an estimate and a check but then cannot find a shop that will make satisfactory repairs for that amount of money.

Given this purpose and the Commissioner's authority to define unfair or deceptive acts or practices in the insurance industry, subsection 5 is reasonably consistent with the statute it purports to implement. Consequently, subsection 5 is a valid exercise of the Commissioner's rule–making authority.[2]

Subsection 6 states:

---

[1]By our analysis we do not mean to imply that insurers in fact operate in this way. Indeed, we have no reason to dispute plaintiffs' contention that the type of agreements they are objecting to are quite prevalent. If so, however, the existence of such agreements or future agreements would not be attributable to subsection 5. The appropriate remedy for the elimination of such agreements, if indeed such agreements are illegal, see footnote 2, would be an action challenging directly those agreements.

[2]Even if subsection 5 is construed to require such agreements, it is far from clear that such agreements would necessarily violate the antitrust laws. Transactions at a set price, entered into through a series of voluntary bilateral contracts, do not necessarily constitute price fixing even though large numbers of sellers are involved. *See, e.g., Theatre Enterprises, Inc. v. Paramount Film Distrib. Corp.,* 346 U.S. 537, 98 L. Ed. 273, 74 S. Ct. 257 (1953). Further, while the agreements

In first party claim situations, if an insurer elects to exercise a contract right to repair and designates a specific repair shop for automobile repairs, the insurer shall cause the damaged automobile to be restored to its condition prior to the loss at no additional cost to the claimant other than as stated in the policy and within a reasonable period of time.

This section regulates the obligations of an insurer who exercises a "right to repair" clause in an automobile insurance policy.[3] Under the subsection an insurer exercising such a right must restore the damaged automobile to its prior condition within a reasonable time. *See Janosky v. Preferred Ins. Exch.,* 52 Wn.2d 801, 329 P.2d 207 (1958). Plaintiffs contend, however, that right–to–repair clauses are unconscionable because, as interpreted by subsection 6, such clauses provide the insurer with the power to disregard the insured's judgment as to the site of repair, thus binding the insured to the insurer's choice of shops. Plaintiffs also argue that enforcement of such clauses constitutes both an unlawful boycott of certain repair shops and a "tying" arrangement in violation of the antitrust laws. Consequently, according to plaintiffs, subsection 6 gives the "force of law" to an unconscionable and illegal contract provision and thus violates the supremacy clause and exceeds the authority of the Insurance Commissioner.

Again, we are unable to accept plaintiffs' argument. Subsection 6 plainly does not *require* an insurer to include a

---

themselves may not be exempt from the antitrust laws under the McCarran–Ferguson Act, 15 U.S.C.A. §§ 1011 *et seq.* as relating to the "business of insurance," *see Group Life & Health Ins. Co. v. Royal Drug Co.,* 440 U.S. 205, 59 L. Ed. 2d 261, 99 S. Ct. 1067 (1979), the regulation itself probably does involve "the business of insurance" and is thus exempt. *SEC v. National Sec., Inc.,* 393 U.S. 453, 21 L. Ed. 2d 668, 89 S. Ct. 564 (1969). Finally, even if the agreements do constitute illegal price fixing agreements and even if subsection 5 is not exempt under the McCarran–Ferguson Act, the "state action" exemption to the antitrust laws may apply. *See, e.g., Parker v. Brown,* 317 U.S. 341, 351, 87 L. Ed. 315, 63 S. Ct. 307, (1942); *Group Life & Health Ins. Co.,* 440 U.S. at 233 n.41.

[3]"Right to repair" clauses are contained in virtually all automobile insurance policies and have existed for decades. Such clauses allow the insurer to repair the damaged vehicle rather than pay the claim in money.

"right to repair" clause in an automobile insurance policy; it merely regulates the insurer's obligation *if* the insurer chooses to exercise such a clause. It does not follow that because subsection 6 recognizes the fact that virtually all automobile insurance policies contain such a clause the subsection thus officially sanctions such clauses.[4] Consequently, because subsection 6 does not mandate right–to–repair clauses, it too is reasonably consistent with the Commissioner's authority to define unfair or deceptive acts and practices.[5]

Subsection 7 provides:

> In any claim situation, an insurer shall make a good faith effort to honor a claimant's request for repairs to be made in a specific repair shop of the claimant's choice, and shall not arbitrarily deny such request. A denial of such a request solely because of the repair shop's hourly rate is arbitrary if such rate does not result in a higher overall cost of repairs. The insurer shall make an appropriate notation in its claim file setting forth the reason it has rejected a claimant's request.

This subsection is designed to insure that insurers make a good faith effort to honor a claimant's choice of repair shop. Plaintiffs argue in their brief, however, that

> [t]he impact of subsection 7 is to mandate by force of law that the insurer's judgment regarding appropriate repair shops supersedes the judgment of choice of the claimant.

Under plaintiffs' interpretation of subsection 7 the mere existence of an insurer's right to "override the insured's judgment" constitutes an illegal restraint of trade in violation of the antitrust laws. Consequently, subsection 7 is

---

[4]Even *assuming arguendo that subsection 6 does authorize right to repair clauses, we* would hesitate to hold such clauses unconscionable. While no case has discussed the precise argument raised by plaintiffs, such clauses have uniformly been upheld. *See, e.g., Tri–State Ins. Co. v. McCraw,* 252 Ark. 1259, 483 S.W.2d 212 (1972); *Williams v. Farm Bureau Mut. Ins. Co.,* 299 S.W.2d 587 (Mo. App. 1957). *See generally* 8 *Blashfield on Automobiles* § 334.4 (3d ed. F. Lewis 1966); 6 J. Appleman, *Insurance* § 4005 (1972).

[5]Because of our holding, we decline to address the issue of whether such clauses constitute illegal boycotts or tying arrangements.

said to violate the supremacy clause and exceed the Insurance Commissioner's authority.

We interpret subsection 7, however, to do just the opposite from what plaintiffs contend. An insurer could never compel a third party claimant (a claimant under a liability policy) to accept the insurer's choice of repair shop, as that claimant, not being bound by a right–to–repair clause, could insist upon a lump sum payment[6] or sue. With a first party claimant (a claimant under a collision policy), subsection 7 plainly makes it more, rather than less, difficult for an insurer to insist upon its choice. Because subsection 7 restricts the right of an insurer to insist upon its choice of repair shop, we believe it promotes the policy underlying the Commissioner's authority to regulate unfair practices and thus hold it to be a valid exercise of that authority.

Judgment affirmed.

PEARSON and PETRIE, JJ., concur.

---

[6]The right of a third party claimant to settle for a lump sum is not explicitly set forth in the regulation. We do not believe, however, that any of the regulations in question in this case foreclose such a right.