[No. 53798-9-I.   Division One.   September 26, 2005.]

HELEN CONWAY, *Respondent*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Appellant*.

408

Robert M. McKenna, *Prosecuting Attorney*, and *Daphne J. Huang* and *Michael W. Collins, Assistants*, for appellant.

*Janet H. Somers* and *Brian T. Hodges* (of *Lybeck Murphy, L.L.P.*), for respondent.

¶1 SCHINDLER, J. — The Department of Social and Health Services (DSHS) revoked Helen Conway's license to operate an adult family home (AFH). In the initial decision, the administrative law judge (ALJ) ruled that although Conway admittedly violated a number of regulations while she was operating three AFH facilities, DSHS did not prove Conway's AFH license should be revoked under WAC 388--76-705(2)(b), but Conway's license should be limited to one AFH. The DSHS Board of Appeals (Board) decided that as a matter of law the ALJ did not have authority to review DSHS's discretionary decision to revoke Conway's license and decide which remedy to impose. The Board in the review decision and final order (Final Order) modified the initial decision and revoked Conway's AFH license. On judicial review, the superior court reversed the Board's Final Order and reinstated the initial decision. DSHS appeals the superior court decision.

¶2 We conclude as a matter of law that Conway has a statutory, regulatory, and constitutional right to administratively challenge DSHS's discretionary decision under

WAC 388-76-705(2)(b), and the ALJ has authority to review DSHS's decision to revoke her AFH license. And while the record supports the conclusion that DSHS did not establish Conway's violations warranted revocation under WAC 388--76-705(2)(b), we agree with DSHS that the ALJ did not have the authority to decide what remedy should be imposed. Because the Board's decision is based on an erroneous conclusion of law, we reverse the Board's Final Order revoking Conway's AFH license and remand for reconsideration of the remedy imposed consistent with WAC 388--76-705(2)(b) and this opinion.

## FACTS

¶3 Helen Conway has been licensed to operate an AFH facility for at least 10 to 12 years.[1] Before obtaining her AFH license, Conway was a foster care provider and provided respite care for developmentally disabled children and adolescents. As the disabled children and adolescents grew older, Conway decided to obtain an AFH license so she could continue to care for them. Conway's first AFH license was for Helen's Care Center in Renton. She later obtained a second AFH license to operate Frank's Home and a third AFH license to operate Eva's Home. The residents at Conway's AFH facilities had developmental disabilities, mental illness, severe brain injury, blindness, cerebral palsy, and autism.

¶4 In the summer of 2001, Conway decided to close Eva's Home. On October 30, 2001, DSHS sent Conway a notice of stop placement of admissions and revocation of license (DSHS Notice) for Helen's Care Center. The DSHS Notice alleged a number of regulatory violations found during unannounced visits in 2001 and a history of noncompliance.[2] On November 13, 2001, DSHS sent Conway a notice

---

[1] An AFH is a home in which adults with functional limitations cohabitate and receive personal or special care. RCW 70.128.007(1), .010(1).

[2] DSHS continued its investigation of Helen's Care Center through March 2002 and amended its notice of revocation three times, identifying additional violations.

of stop placement of admissions and revocation of license for Frank's Home. The DSHS Notice for Frank's Home was based on the alleged violations at Helen's Care Center and violations discovered during unannounced visits at Frank's Home.[3]

¶5 Conway requested an administrative hearing to review DSHS's decision to revoke her AFH license for Helen's Care Center and Frank's Home. Before the scheduled hearing, Conway decided not to challenge the DSHS decision to revoke her license for Helen's Care Center.

¶6 An ALJ conducted a three-day administrative hearing on DSHS's decision to revoke Conway's AFH license to operate Frank's Home. Conway admitted violations and admitted she made mistakes. But Conway asserted that the violations and mistakes were the result of trying to run three AFH facilities and she was "stretched too thin."[4] Rather than revoke her AFH license altogether, Conway argued the appropriate remedy was to limit her license to operate only one AFH, Frank's Home. Several witnesses testified on Conway's behalf, including a DSHS investigator. Family members of some of the residents testified about the exceptional care Conway provided, the home-like atmosphere, and the outings and annual vacation Conway organized for the residents. The DSHS investigator testified that by approximately September 2001, one month before the first DSHS Notice for Helen's Care Center, many of the problems identified by DSHS had been resolved. According to the ALJ's findings:

> The Appellant resolved many of the problems which had existed previously by approximately September 2001, according to Katherine Ander, one of the investigators, and according to DSHS Exhibit 47, offered by DSHS. One of the consultants wrote in her report:

---

[3] DSHS continued its investigation of Frank's Home through March 2002 and amended its notice of revocation three times, identifying additional violations.

[4] Administrative R. (AR) at 50.

"Overall Summary:

"Helen was most cooperative with all suggestions. She has difficult residents with multiple needs. Her sense of being overwhelmed has resolved. I felt confident that her efforts were genuine and that her overall performance will met [sic] regulations."

. . . That report was written September 12, 2001. Ms. Conway took the residents and staff on their long-distance vacation in mid-October 2001, and DSHS issued the Stop Placement on October 22, 2001, scarcely one month from the date of the very positive report issued by the DSHS consultant.[5]

¶7 The ALJ concluded Conway was capable of providing good quality care to the vulnerable and severely disabled but was overwhelmed by trying to operate three AFH facilities. The ALJ also found Conway had resolved many, if not most, of the problems by September 2001. The ALJ ruled that DSHS proved most but not all of the alleged violations but that DSHS did not establish the violations warranted revocation of Conway's AFH license.

Ms. Conway was overwhelmed by staffing issues and the responsibilities of operating three AFHs, and of operating two AFHs. She received consultations paid for by DSHS regarding various problems which existed at her AFHs. . . .

The appropriate remedy in the present case is difficult to determine, given the number of violations in the various AFHs operated by the Appellant, the evident high quality of care on some issues, the Appellant's admission that more than one AFH is too many, and her request to retain a license limited to one AFH only. The Appellant's range of violations ' stem not from poor character, but from the stress of trying to do too much for too many. The Appellant demonstrated poor judgment as the root of the various violations, again, not from an inability to be a[n] effective AFH provider, but from an inability to be an effective AFH provider of three AFHs. DSHS has not demonstrated that revocation is the correct sanction. The record demonstrates that the Appellant is capable of providing good

5 AR at 45 (quoting DSHS Ex. 47, at 2).

quality care to the vulnerable and severely disabled population of residents she serves, but that [t]here are limits to the amount of care she can provide and oversee.

. . . The evidence does not support the appropriateness of the stop placement imposed by DSHS, when it was demonstrated in the [a]utumn of 2001 that the Appellant was not adequately serving the needs of her residents. That stop placement should be lifted, if it has not already been lifted, now that the Appellant is operating only one AFH.[6]

The ALJ decided that the stop placement for Frank's Home should be lifted and that Conway "shall retain the one license, but not be licensed for, or eligible for license for, any additional AFHs."[7]

¶8 DSHS filed a petition for review of the ALJ's initial decision with the Board. DSHS challenged the ALJ's authority to review whether violations of the licensing regulations warranted revocation of Conway's license under WAC 388-76-705 and challenged the ALJ's authority to decide the appropriate remedy. DSHS also claimed the ALJ improperly considered testimony concerning what remedy was appropriate.

¶9 The Board reversed the ALJ's initial decision and revoked Conway's AFH license for Frank's Home. The Board concluded as a matter of law that Conway did not have a right to an administrative hearing to challenge DSHS's decision under WAC 388-76-705 and the ALJ did not have the authority to review DSHS's decision or impose a different remedy. The Board ruled that DSHS met its burden of proving that Conway had violated numerous regulations and entered modified findings and conclusions of law consistent with the DSHS decision to revoke Conway's license. On review, the superior court reversed the Board's decision to revoke Conway's AFH license and reinstated the ALJ's initial decision that allowed her to continue to operate Frank's Home. DSHS appeals.

---

[6] AR at 58-59.

[7] AR at 59.

## ANALYSIS

¶10 The Washington Administrative Procedure Act (WAPA), chapter 34.05 RCW, governs judicial review of final agency action. RCW 34.05.510; *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993). When reviewing agency action, this court "sits in the same position as the superior court, applying the standards of the WAPA directly to the record before the agency." *Id.* A reviewing court may reverse an administrative decision if: (1) the agency has erroneously interpreted or applied the law, (2) the decision is not based on substantial evidence, or (3) the decision is arbitrary or capricious. *Tapper*, 122 Wn.2d at 402; *see also* RCW 34.05.570(3). The party challenging an agency's decision must establish error. RCW 34.05.570(1)(a).

¶11 DSHS contends the Board correctly decided as a matter of law that Conway has no right to an administrative review of DSHS's discretionary decision under WAC 388-76-705(2)(b) to revoke her AFH license for violating AFH regulations. We review an agency's interpretation or application of the law de novo under an error of law standard. *Postema v. Pollution Control Hearings Bd.*, 142 Wn.2d 68, 77, 11 P.3d 726 (2000); *Bond v. Dep't of Soc. & Health Servs.*, 111 Wn. App. 566, 571-72, 45 P.3d 1087 (2002). We conclude Conway has a regulatory, statutory, and constitutional right to administratively challenge DSHS's decision to revoke her license under WAC 388-76-705(2)(b) and an ALJ has the authority to review DSHS's discretionary decision of which remedy to impose.

¶12 RCW 70.128.160(2) authorizes but does not require DSHS to take one or more of the following actions in response to statutory or regulatory AFH violations or noncompliance:[8]

---

[8] RCW 70.128.160 provides:

(1) The department is authorized to take one or more of the actions listed in subsection (2) of this section in any case in which the department finds that an adult family home provider has:

(2) When authorized by subsection (1) of this section, the department may take one or more of the following actions:

(a) Refuse to issue a license;

(b) Impose reasonable conditions on a license, such as correction within a specified time, training, and limits on the type of clients the provider may admit or serve;

(c) Impose civil penalties of not more than one hundred dollars per day per violation;

(d) Suspend, revoke, or refuse to renew a license; or

(e) Suspend admissions to the adult family home by imposing stop placement.

¶13 As required by RCW 70.128.040, DSHS adopted regulations to implement standards for operating an AFH under chapter 388-76 WAC. WAC 388-76-705 addresses the available remedies for violations or noncompliance and reiterates that DSHS is authorized to impose a remedy for regulatory violations. WAC 388-76-705(2)(b) mandates that in determining the appropriate remedy, DSHS "shall take into account the severity of the potential or actual impact of the violations on residents and which remedy or remedies are likely to improve resident outcomes and satisfaction in a timely manner."

¶14 Relying on WAC 388-76-710(3), the Board concluded that Conway had a limited right to challenge only DSHS's decision about whether to impose a remedy but Conway had no right to challenge *which* remedy DSHS decided to impose.

The Appellant herself has no right to an administrative hearing to challenge the appropriateness of the remedy the Depart-

(a) Failed or refused to comply with the requirements of this chapter or the rules adopted under this chapter;

(b) Operated an adult family home without a license or under a revoked license;

(c) Knowingly or with reason to know made a false statement of material fact on his or her application for license or any data attached thereto, or in any matter under investigation by the department; or

(d) Willfully prevented or interfered with any inspection or investigation by the department.

ment has chosen to impose against her adult family home license. The only right to a hearing the Appellant has, as an adult family home licensee, is to contest a decision by the department **to impose a remedy**. WAC 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; and (b) 388-76-710(3) does not confer upon the Appellant the right to contest the remedy the Department has chosen to impose, only the right to contest the Department's decision to impose a remedy in the first place. Because the Appellant herself has no hearing right to challenge the appropriateness of the remedy the Department has chosen to impose against her license, the ALJ cannot have this issue before her to decide.[9]

¶15 We review the Board's interpretation of WAC 388--76-710(3) under the error of law standard. In interpreting regulations, the following cannons of construction apply: (1) "courts must give effect to every word, clause, and sentence whenever possible; no part should be deemed inoperative or superfluous unless the result of obvious mistake or error;" (2) when "may" and "shall" are both used in a provision, "may" indicates a permissive action and "shall" indicates a mandatory action; (3) in the absence of ambiguity or statutory/regulatory definition, "words should be given their ordinary or plain meaning." *Aponte v. Dep't of Soc. & Health Servs.*, 92 Wn. App. 604, 617-18, 965 P.2d 626 (1998). To the extent DSHS interprets the regulations as defining the right to administrative review, its view is not entitled to deference. *Cf. Russell v. Dep't of Human Rights*, 70 Wn. App. 408, 412, 854 P.2d 1087 (1993).

¶16 WAC 388-76-710(3) provides:

A person contesting *any decision by the department to impose a remedy* shall within twenty-eight days of receipt of the decision:

(a) File a written application for an adjudicative proceeding by a method showing proof of receipt with the board of appeals at the mailing address contained in WAC 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; and

---

9 AR at 11-12.

(b) Include in or with the application:

(i) The grounds for contesting the department decision; and

(ii) A copy of the contested department decision.

(Emphasis added.) Without qualification, the language "any decision" in WAC 388-76-710(3) unambiguously encompasses all of DSHS's decisions and does not differentiate discretionary decisions from other decisions. We conclude WAC 388-76-710(3) includes the right to contest DSHS's remedy under WAC 388-76-705(2)(b).

¶17 In addition, RCW 70.128.160(5) provides that DSHS's actions under that section are governed by WAPA:

Chapter 34.05 RCW applies to department actions under this section, except that orders of the department imposing license suspension, stop placement, or conditions for continuation of a license are effective immediately upon notice and shall continue in effect pending any hearing.

WAPA expressly requires an adjudicative proceeding for revocation, suspension, or modification of a license.[10] RCW 34-.05.422(1)(c). WAPA also requires the presiding officer to include in his or her initial and final orders "a statement of findings and conclusions, and the reasons and basis therefor, on all the *material issues of* fact, law, or *discretion* presented on the record, *including the remedy or sanction.*" RCW 34.05.461(3).[11] The Board's interpretation of WAC 388-76-710(3) conflicts with the unambiguous language used in the regulation and the statutory provisions of RCW 70.128.160(5), RCW 34.05.422(1)(c), and .461(3). *See H&H P'ship v. State*, 115 Wn. App. 164, 170, 62 P.3d 510 (2003) (recognizing that an agency regulation that modifies or conflicts with a statute is invalid); *Horan v. Marquardt*, 29 Wn. App. 801, 804, 630 P.2d 947 (1981). We conclude as a matter of law that Conway has a regulatory and statutory right to an administrative review of DSHS's discretionary

---

[10] An adjudicative proceeding is an administrative hearing. RCW 34.05.010(1), 34.12.020(3).

[11] (Emphasis added.)

decision to revoke her license as a remedy under WAC 388-76-705(2)(b). *See Children's Hosp. & Med. Ctr. v. Dep't of Health*, 95 Wn. App. 858, 868, 975 P.2d 567 (1999) ("Where a regulation is clear and unambiguous, a court should apply its plain language and may not look beyond the language to consider the agency's interpretation.").

¶18  We also conclude Conway has a due process right to administrative review of DSHS's decision to revoke her license. Whether a person has a constitutional right to an administrative hearing is a question of law reviewed de novo. *Crescent Convalescent Ctr. v. Dep't of Soc. & Health Servs.*, 87 Wn. App. 353, 357, 942 P.2d 981 (1997). A state may not deprive a person of "life, liberty, or property, without due process of law." U.S. CONST. amends. V, XIV; WASH. CONST. art. I, § 3. A professional license is considered a property interest requiring due process of law. *Bang Nguyen v. Dep't of Health*, 144 Wn.2d 516, 523, 29 P.3d 689 (2001); *Wash. Med. Disciplinary Bd. v. Johnston*, 99 Wn.2d 466, 474, 663 P.2d 457 (1983). At a minimum, due process requires notice and an opportunity to be heard. *Soundgarden v. Eikenberry*, 123 Wn.2d 750, 768, 871 P.2d 1050 (1994); *see also* RCW 34.05.422(1)(c). Here, the parties do not dispute that Conway has a protected property interest in her AFH license. Under *Crescent*, she has a constitutional right to an administrative review of DSHS's discretionary decision to revoke her license as a remedy for regulatory violations. *Crescent*, 87 Wn. App. at 356, 360 (recognizing the right to an administrative hearing to challenge DSHS's *discretionary* decision to impose a citation); *see generally Nguyen*, 144 Wn.2d 516.

¶19  The Board's conclusion that Conway was not entitled to an administrative hearing to challenge DSHS's discretionary decision to revoke her AFH license was an error of law. WAPA provides that "[w]hen required by law or constitutional right, and upon the timely application of any person, an agency shall commence an adjudicative proceeding." RCW 34.05.413(2). Conway has a regulatory, statutory, and constitutional right to challenge DSHS's discretionary decision to revoke her license as a remedy for

violating AFH regulations, and an administrative hearing is the proper forum to make that challenge. *See Crescent*, 87 Wn. App. at 360; *Puget Sound Air Pollution Control Agency v. Fields Prods., Inc.*, 68 Wn. App. 83, 86-87, 88, 841 P.2d 1297 (1992) ("[T]he forum, to which the 'penalty' may be appealed, has the implicit authority to judge the propriety of the penalty as well as the existence of a violation."). We also conclude that as the presiding officer of an administrative hearing, the ALJ has the authority to review the propriety of DSHS's discretionary decision to revoke Conway's license.[12] RCW 34.05.413(2).

¶20 However, we agree with DSHS that the ALJ exceeded her authority "when she substituted her judgment for that of the Department in choosing which remedy to impose against [Conway] for her violation of the Department's regulations."[13] "The power and authority of an administrative agency is limited to that which is expressly granted by statute or necessarily implied therein." *McGuire v. State*, 58 Wn. App. 195, 198, 791 P.2d 929 (1990). The legislature delegated the discretionary authority to impose a remedy under RCW 70.128.160 to DSHS only. *See* RCW 70-.128.160(1).[14] The ALJ had authority to review the propriety of DSHS's discretionary decision to revoke Conway's license but did not have the authority to impose a different remedy.

¶21 DSHS contends that even if Conway was entitled to administrative review of its decision to revoke her AFH license under WAC 388-76-705(2)(b), she failed to prove the decision was arbitrary and capricious. An agency's discretionary decision will not be reversed without a clear showing of abuse. *ARCO Prods. Co. v. Wash. Utils. & Transp. Comm'n*, 125 Wn.2d 805, 888 P.2d 728 (1995). An agency abuses its discretion when it exercises its discretion in an arbitrary and capricious manner. *See Aponte*, 92 Wn.

---

[12] WAPA states that "the presiding officer in an administrative hearing shall be: . . . [an] administrative law judge[ ] . . . ." RCW 34.05.425(1)(c).

[13] AR at 10.

[14] RCW 70.128.160(1) provides, "The department is authorized to take one or more of the actions listed in subsection (2) of this section."

App. 604. A decision is arbitrary and capricious if it is
" 'willful and unreasoning action in disregard of facts and
circumstances.' " *Id.* at 621 (quoting *Wash. Waste Sys., Inc.
v. Clark County*, 115 Wn.2d 74, 81, 794 P.2d 508 (1990)).

¶22 RCW 70.128.160 gives DSHS discretionary au-
thority to impose a remedy for statutory or regulatory
violations. In order to determine whether DSHS's deci-
sion to revoke Conway's AFH license was warranted, the
Board must give deference to the ALJ under RCW 34.05.464
and take into account all relevant evidence under WAC
388-76-705(2)(b), including Conway's testimony, the testi-
mony of the DSHS investigator, and the testimony of the
residents and their family members regarding Conway's
extraordinary level of care and the impact revocation would
have on them.[15] The record supports the conclusion that
under WAC 388-76-705(2)(b), DSHS did not establish that
Conway's violations warranted revocation. But because the
Board based its reversal of the ALJ's decision on an error of
law and did not examine the propriety of DSHS's choice of
remedy under WAC 388-76-705(2)(b), and did not consider
all the relevant evidence in the record, we remand. *See* RCW
34.05.574(1)(b).

## CONCLUSION

¶23 The Board's decision that Conway was not entitled
to administrative review of DSHS's discretionary deci-
sion to revoke her AFH license under WAC 388-76-
-705(2)(b) was an error of law. We remand to the Board
for further proceedings consistent with WAC 388-76-
-705(2)(b) and this opinion. Conway is entitled to attorney

---

[15] *See also* WAC 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(1) (requiring the ALJ to hear and decide issues de
novo based on evidence presented during the hearing); WAC 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(6)(a)-(b)
(authorizing an ALJ to decide which "evidence is more credible if evidence
conflicts . . . and . . . weight given to the evidence").

fees as the prevailing party under RCW 4.84.350(1) upon compliance with RAP 18.1.[16]

COLEMAN and GROSSE, JJ., concur.

After modification, further reconsideration denied February 24, 2006.

---

[16] DSHS asks that we defer consideration of Conway's request for attorney fees but provides no reason and cites no supporting authority. Reviewing courts are not required to address issues raised in passing or unsupported by authority or persuasive argument. *See* RAP 10.3(a)(5); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).