[No. 45475-7-I.   Division One.   January 8, 2001.]

MICHAEL McGAHUEY, ET AL., *Appellants*, v. ANNA HWANG, *Respondent*.

*Dan R. Young* (of *Bjorklund & Young*), for appellants.

*Kenneth W. Masters* and *Charles K. Wiggins* (of *Wiggins Law Offices, P.L.L.C.*), for respondent.

AGID, C.J. — Four mobile home park tenants—Michael and Patricia McGahuey and Craig and Pauline Rhodes— filed suit against their landlord, Anna Hwang, alleging that Hwang had retaliated against them by raising their rent and imposing extra vehicle fees because they had participated in a federal discrimination suit against her. We hold that Hwang had legal authority under the Mobile Home Landlord-Tenant Act (MHLTA) to make these changes and that there is no evidence she imposed either charge for retaliatory reasons. We therefore affirm the summary judgment order in her favor.

## FACTS AND PROCEDURAL HISTORY

Hwang owns and operates the Duvall Highlands Mobile Home Park (the Park). In 1993, over 30 Park tenants— including the McGahueys and the Rhodes—filed a complaint against Hwang with the Department of Housing and Urban Development (HUD). The complainants alleged Hwang had discriminated against them on the basis of familial status in violation of the federal Fair Housing Act by imposing a fee of $15 for each occupant over two per

mobile home unit.[1] HUD investigated the claim, found reasonable cause to believe discriminatory acts had occurred, and issued a charge of discrimination.

Based on HUD's charge, the United States filed a lawsuit against Hwang in the Federal District Court for the Western District of Washington. Throughout the federal court proceedings, Hwang sought to justify the $15 fee by asserting it was intended to cover additional utility expenses resulting from having more than two people in a unit.[2] The parties eventually agreed to a first consent order (FCO), in which Hwang agreed to eliminate the $15 per person fee and to arrange and pay for installing individual water meters for each unit.[3] The FCO also provided that tenants would be billed for utilities according to the actual consumption per unit, separate from the rent, "and such billing will not be considered an additional fee in violation of the Fair Housing Act or any other law." Finally, the FCO required all tenants to execute an amendment to their rental agreements "in accordance with the terms of this consent order," and required Hwang to freeze the complainants' base rent for one year. The court dismissed the action with prejudice, except that it allowed the parties to file motions to enforce the terms of the FCO.

Hwang and appellants (the Tenants), as well as a few of the other original complainants, disagreed about how the FCO should be implemented, and the Tenants refused to comply with the FCO's requirements of executing an amendment to their lease and paying separately for utilities they actually used. Accordingly, upon six months' notice, Hwang began charging them $450 in monthly rent, which included a base rent of $375, plus $75, the average monthly utility cost per unit. The Tenants refused to pay

---

[1] This fee affected primarily families with children.

[2] At the time of the first consent order, Park tenants paid a base rent that included all utilities.

[3] The parties were concerned only with water service when they drafted the FCO because, apparently, the Park was already able to determine consumption rates per unit for other utilities and services such as gas and sewer.

the $75 utility charge and filed suit for declaratory and injunctive relief in King County Superior Court. That suit is the subject of this appeal.

The Tenants' complaint alleged that Hwang was charging them more than other tenants for rent,[4] and that she had imposed a $25 extra vehicle fee on them even though their original leases did not include such a fee. The complaint charged that both of these acts were retaliatory, not in good faith, and prohibited by the MHLTA, and requested "[a] judgment for declaratory relief setting forth the proper amount of rent and other charges owing and an injunction prohibiting defendant from charging excessive fees to plaintiffs[.]"

Shortly after the Tenants filed this state action, the parties to the federal action moved in federal court for an order enforcing the consent order. After a hearing, the parties agreed to negotiate a resolution to their disputes to avoid the time and expense of further court proceedings. On October 29, 1998, the United States and Hwang signed a second consent order (SCO), which established the base rent applicable to all units at the Park at either $375 plus water, sewer, garbage and other applicable municipal utility services actually used by that unit, or $450.[5] The SCO gave the tenants in each unit the option of choosing which rent calculation method they preferred and instructed Hwang to complete installation of the individual water meters.[6]

On December 9, 1998, Hwang filed a motion in superior court to dismiss the Tenants' state suit for failure to state a claim on which relief can be granted under CR 12(b)(6). She argued dismissal was required because the allegations

---

[4] They claimed the general base rent for Park tenants was $375, but that tenants who had filed the complaint with HUD were charged a base rent of $450.

[5] The parties apparently agreed that $75 was a reasonable estimate of the monthly utility expenses per unit.

[6] At that point individual meters had been installed at 76 of the Park's 150 units.

"stem from the enforcement of the terms of two federal court Consent Orders which preclude all issues in the state court action and over which the federal court has retained jurisdiction." The court recharacterized the motion to dismiss as a motion for summary judgment[7] and denied it without prejudice, giving Hwang an opportunity to

> seek a stay of this action in federal court and determine whether the federal court has retained jurisdiction of the issues raised in plaintiffs' complaint in this action, and whether plaintiffs' retaliation claims have been resolved by the consent orders entered in the federal action. If ordered by the federal court, this court will stay this state court action so that the issues raised by the parties may be resolved in federal court.

The record does not reveal whether Hwang ever took the matter to the federal court. She filed a second motion for summary judgment on August 16, 1999, with additional supporting material. The trial court granted the motion and denied the Tenants' motion for reconsideration. This appeal followed.[8]

## DISCUSSION

The Tenants contest Hwang's authority to require them to pay separately for utilities and impose the extra vehicle fees, as well as her motivation for doing so. First, they contend that despite the federal consent orders, Hwang did not have the authority under the MHLTA either to require them to pay for utilities in addition to base rent or to impose the extra vehicle fees. Second, they argue that even if the

---

[7] CR 12(b) provides that if, in a 12(b)(6) motion "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in rule 56[.]" The trial court considered numerous other documents, including the federal court proceedings and declarations from the parties and their attorneys.

[8] We review a summary judgment de novo, considering the facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999). Summary judgment is appropriate only if the moving party is entitled to judgment as a matter of law and there are no genuine issues of material fact. CR 56(c); *Hertog*, 138 Wn.2d at 275.

charges were lawful under the MHLTA, they were illegal because Hwang implemented them in retaliation for the Tenants' participation in the federal discrimination action. We conclude that Hwang had legal authority under the MHLTA and no improper motivation for instituting these changes, and therefore affirm.[9]

*Did Hwang violate the MHLTA by requiring the Tenants to begin paying separately for utilities, even though their original lease agreement stated that the Park would provide utilities?*

As noted above, Hwang began charging the Tenants $75 a month for utilities when they refused to pay separately for the utilities they actually used, as required by the FCO. The SCO supersedes the FCO and requires Hwang to charge tenants either a base rent of $375 plus utilities, or a flat rate of $450, at the tenant's option. The Tenants argue on appeal that despite the mandate of the federal consent orders, Hwang cannot require them to pay for utilities in addition to their base rent because their original lease agreements specify that Hwang will provide utilities.[10] Essentially, the Tenants contend that under the MHLTA, the provisions in their original leases trump any rental rate structure instituted by the federal court. We disagree.

Citing RCW 59.20.090(1), which provides that leases automatically renew at the end of their term,[11] the Tenants claim the MHLTA prohibits a landlord from requiring a tenant to pay for utilities once any lease requiring the landlord to do so is signed. According to the Tenants, the landlord is not permitted to increase or add any fee or

---

[9] We disagree with Hwang that the federal action precludes our jurisdiction over the Tenants' state law claims here. The federal discrimination suit had nothing to do with claims arising under the MHLTA and cannot bar state jurisdiction over those state law claims.

[10] The agreements require the Tenants to pay a base rent and also state: "Water, sewer, and garbage collection up to two cans shall be provided to the premises without charge to the Tenant."

[11] That provision states in part: "Any rental agreement of whatever duration shall be automatically renewed for the term of the original rental agreement, unless a different specified term is agreed upon."

charge except to increase the rent when the lease agreement expires as provided in RCW 59.20.090(2).[12] This reading of the statute is untenable.

A court's primary duty in interpreting a statute is to ascertain and give effect to the intent and purpose of the Legislature.[13] According to the Tenants' reading of the statute, the Legislature intended to bind landlords in perpetuity to the terms of their original leases, except that a landlord may increase rent with three months' notice. While we recognize that one significant purpose of the MHLTA is to give heightened protection to mobile home tenants, there are two related reasons for rejecting the Tenants' interpretation of the statute. First and most obvious, it nowhere provides that a landlord may not increase or impose fees for services in addition to the rent. Rather, portions of the statute ensure that whatever alterations the landlord seeks must be equitable. For example, the landlord may not charge a utility fee in excess of actual utility costs[14] or increase a tenant's obligations or decrease services in retaliation for a tenant's good faith lawsuit or membership in a homeowners association.[15] And even these provisions, which relate directly to the kinds of services and charges at issue here, do not bar increases or changes in fees. Second, the only limitation on increases of any kind found in the MHLTA is the requirement discussed above that rental rates—not fees—be increased only upon lease expiration and three months' notice. Express mention of one thing in a statute implies the exclusion of another.[16] Thus, we cannot accept the Tenants' argument that the limitation on raising rent prohibits raising or imposing fees.

---

[12] That section provides: "A landlord seeking to increase the rent upon expiration of the term of the rental agreement of any duration shall notify the tenant in writing three months prior to the effective date of any increase in rent."

[13] *Limstrom v. Ladenburg*, 136 Wn.2d 595, 607, 963 P.2d 869 (1998).

[14] *See* RCW 59.20.070(6).

[15] *See* RCW 59.20.070(5).

[16] *Kreidler v. Eikenberry*, 111 Wn.2d 828, 835, 766 P.2d 438 (1989).

Legally and logically, it does just the opposite. By omitting any limit on assessing or raising fees or other charges, the statute has imposed no restrictions on them. So long as utility charges do not exceed the actual cost of the service and fees and charges are not retaliatory, the statute permits the landlord to impose them.

This is a practical approach for the Legislature to take. It recognized that mobile homes are difficult and expensive to move and, to protect tenants from the instability inherent in most rental arrangements, it provided for automatic renewal and a long notice period for rent increases. But it did not require that all original lease terms remain in force through every automatic renewal because renewals could extend for countless years. By not regulating them, the Legislature did allow changes in the lease terms to permit the landlord to charge for utilities, so long as they were limited to the actual cost. This is nothing more than a practical acknowledgment that costs increase and those using a service may be required to pay for it.

In sum, the MHLTA allows Hwang to require the Tenants to pay for their utilities in addition to base rent. Although Hwang obviously instituted that change in response to the federal consent orders, that fact is not essential to our analysis.[17]

*Did Hwang violate the MHLTA by requiring the Tenants to pay the extra vehicle fee, even though the original Park rules the Tenants signed did not mention those fees?*

■ To the extent the Tenants claim that Hwang cannot impose the extra vehicle fee because it was not in the original Park rules they signed, that claim fails. Those rules clearly state they are subject to revision with written notice,[18] and nothing in the MHLTA prohibits a landlord

---

[17] The Tenants also argue that the SCO is binding on Hwang but not any of the Park tenants because the United States was the only plaintiff party involved. Because Hwang had authority under the statute to impose utility charges, we do not need to reach this issue.

[18] The rules the Tenants signed state: "Management reserves the right to amend these rules by written notice to the residents."

from changing tenant rules and regulations.

*Is there a genuine issue of material fact about whether Hwang retaliated against the Tenants for filing the HUD complaint?*

■ Although the Tenants appear to assert that Hwang retaliated against them for filing the HUD complaint by requiring them to pay for utilities and imposing the extra vehicle fees, they fail to articulate the legal grounds for their claim. The only MHLTA provision that might be interpreted to allow a claim for retaliation is RCW 59.20.070(5).[19] But we need not determine whether that section provides a legal basis for a retaliation claim here because the Tenants have failed to present any supporting evidence. The record indicates Hwang first imposed the rent increase because the Tenants failed to pay for the utilities they used after the first consent order was entered. She therefore added $75, the average monthly utility bill per unit, to their base rent of $375. Hwang will undoubtedly continue to charge the Tenants that amount now that the SCO is in place unless they request, as the SCO permits them to, the alternative charge of $375 plus utilities. The Tenants fail to present any evidence to suggest that Hwang did anything other than carry out the requirements of the consent orders.[20]

---

[19] That section provides in pertinent part:

A landlord shall not:

. . . .

(5) . . . increase rental or other tenant obligations, decrease services, or modify park rules in retaliation for any of the following actions on the part of a tenant taken in good faith:

(a) Filing a complaint with any state, county, or municipal governmental authority relating to any alleged violation by the landlord of an applicable statute, regulation, or ordinance;

(b) Requesting the landlord to comply with the provision of this chapter or other applicable statute, regulation, or ordinance of the state, county, or municipality;

(c) Filing suit against the landlord for any reason;

(d) Participation or membership in any homeowners association or group[.]

[20] It is not clear from the record whether the Tenants allege that the water

The Tenants also claim that Hwang retaliated against them by imposing the $25 extra vehicle fee. This claim is based solely on Patricia McGahuey's declaration,[21] in which she stated:

> Paragraph 24 [of the Rules and Regulations I signed with the original lease] allows me to park more than three vehicles in my driveway without charge if my driveway is properly extended. My driveway is properly extended. To my knowledge, I have never paid a fee for parking a car in my driveway. Anna Hwang has asked me to pay such a fee, and that is one of the issues in this lawsuit.

These allegations are not sufficient to survive summary judgment. That Hwang began charging the McGahueys the extra vehicle fee some time after they filed the HUD complaint is similarly insufficient. Summary judgment was appropriate.[22]

*Discovery Sanctions and Attorney Fees*

Because there were no genuine factual issues, we affirm the trial court's orders denying the Tenants' two requests for discovery sanctions. We grant Hwang's request for attorney fees on appeal under RAP 18.1(a) and RCW 59.20.110, which states that "[i]n any action arising out of [the MHLTA], the prevailing party shall be entitled to reasonable attorney's fees and costs."

Affirmed.

BAKER and BECKER, JJ., concur.

Review denied at 144 Wn.2d 1004 (2001).

---

meter installation was unfair because Hwang, by her own admission, arranged for the meters to be installed first at the units belonging to the HUD complainants. The complainants were therefore subject to the increased utility fees required by the SCO slightly earlier than other tenants. But Hwang's decision to install the meters at complainants' mobile homes first is reasonable because it was they who filed the complaint which resulted in the remedy the court ordered.

[21] Presumably only the McGahueys are involved in this issue because the Tenants do not mention the Rhodes in their arguments about the vehicle fee.

[22] While the McGahueys were entitled to notice of any changes in Park rules before they were made subject to them, there is no evidence Hwang failed to comply with that requirement.