FILED
COURT OF APPEALS
DIVISION II

2014 MAR 19 AM 8:46

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| WESTERN PLAZA, LLC, | No. 43514-4-II |
| Respondent, | |
| v. | |
| NORMA TISON, | ORDER GRANTING |
| | MOTION TO PUBLISH |
| Appellant. | |

Appellant Norma Tison and third party Manufactured Housing Communities of Washington move this court for publication of the unpublished opinion filed on January 28, 2014. The court having reviewed the record and files here, now, therefore, it is hereby

ORDERED that the final paragraph that reads, "A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered." is deleted. It is further

ORDERED that the opinion will now be published.

DATED this _19TH_ day of _MARCH_, 2014.

Johanson, A.C.J.

ACTING CHIEF JUDGE

FILED
COURT OF APPEALS
DIVISION II

2014 JAN 28 AM 9:53

STATE OF WASHINGTON

BY_____
        DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | | |
|---|---|---|
| WESTERN PLAZA, LLC, | | No. 43514-4-II |
| | Respondent, | |
| v. | | |
| NORMA TISON, | | UNPUBLISHED OPINION |
| | Appellant. | |

JOHANSON, J. — Norma Tison appeals the trial court's order granting Western Plaza, LLC's motion for judgment on unlawful detainer and attorney fees and costs, and the order denying her motion for reconsideration. Tison primarily argues that her mobile home land rent may be increased only to the extent provided in the rental agreement. We agree.[1] Because nothing in the "Manufactured/Mobile Home Landlord-Tenant Act" (MHLTA)[2] prohibits a landlord and tenant from agreeing to the amount of future rent increases, we reverse the trial court and remand for entry of summary judgment in Tison's favor, including costs and attorney fees.

---

[1] Because we agree with Tison that the rent increase limitation is enforceable, we do not reach her other arguments.

[2] Ch. 59.20 RCW.

## FACTS

In 2001, Tison purchased a mobile home and entered into a "Manufactured Home Lot One-Year Rental Agreement" (Agreement) for a lot at the Western Plaza Mobile Home Park with the park's owner, Joel Erlitz. The Agreement specifically provided for a one-year term beginning October 12, 2001, and that upon expiration of the original term, the Agreement would automatically renew for a period of one month and thereafter be a tenancy from month-to-month. The Agreement set monthly rent at $345. The Agreement used a standard form with several provisions preprinted but also included three handwritten provisions on the bottom of its second page: (1) "Landlord, Erlitz, agrees to have land rent remain at $345.00 for two years"; (2) "Every other year, rent will be raised no more than $10.00 for remaining tenancy"; and (3) "December 2001 land rent of $345.00 to be waived." Clerk's Papers (CP) at 23.

Erlitz increased Tison's rent to $355 in October 2003, to $365 in October 2005, and to $375 in October 2007. Then in 2008, Western Plaza bought the park from Erlitz. In March 2009, Western Plaza sent Tison written notice of its intent to increase her rent to $405 effective July 1, 2009. Tison complained that the increase was improper under the Agreement. Then, in June 2011, Western Plaza sent Tison notice that it was increasing rent to $495 effective October 1, 2011.

Tison ignored the rent increase notices and in October 2011, she began sending $395 per month, which she thought was appropriate under the Agreement's provision that rent increases would be limited to $10 per month every two years. Western Plaza refused to accept the $395 payment and sent it back to Tison. In mid-October, Western Plaza sent Tison a five-day notice to vacate and pay rent due of $495. Tison did not comply. The next month, Western Plaza served Tison with an eviction summons and a complaint for unlawful detainer.

2

In April 2012, Tison moved the superior court for summary judgment dismissal of Western Plaza's unlawful detainer action. Western Plaza filed a cross motion for unlawful detainer judgment in its favor. Both parties acknowledged that no material facts were in dispute and that summary judgment was appropriate. The superior court entered findings of fact and conclusions of law for unlawful detainer in Western Plaza's favor. The superior court concluded that there was no substantial issue of material fact and that "[t]he landlord may amend the lease upon proper notice when the lease automatically renews." CP at 94. It entered judgment for Western Plaza for the rent owing and attorney fees and costs and directed the clerk to issue a writ of restitution. Tison moved for reconsideration which the court denied. Tison appeals.

## ANALYSIS

Tison argues that the rent increase limitation is enforceable because it was bargained and negotiated for between herself and the park's former owner, Erlitz; courts should not limit parties' freedom to contract; and the rent increase limitation was enforceable against any landlord for as long as she lived at the park.[3] Western Plaza responds that the Agreement specifically provided for a one-year term, that after the first year it could raise rent in accordance with the MHLTA, and that the rent increase limitation provision was unenforceable after the first year. We agree with Tison and hold that the rent increase limit provision specifically bargained for here does not violate the MHLTA and the MHLTA does not render it unenforceable.

---

[3] Tison also argues that the doctrines of waiver, bad faith, and promissory and equitable estoppel prevent Western Plaza from raising her monthly rent more than $10 every two years. Western Plaza responds that these doctrines do not apply here. Because we reverse on Tison's primary argument, we do not address her alternative arguments.

No. 43514-4-II

STANDARD OF REVIEW AND RULES OF LAW

When reviewing an order for summary judgment, we engage in the same inquiry as the trial court. *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994). We will affirm summary judgment if no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law. CR 56(c). All facts and reasonable inferences are considered in the light most favorable to the nonmoving party, and all questions of law are reviewed de novo. *Mountain Park*, 125 Wn.2d at 341.

We review all questions of statutory interpretation de novo. *State v. Gonzalez*, 168 Wn.2d 256, 263, 226 P.3d 131, *cert. denied*, 131 S. Ct. 318 (2010). First, we look at the statute's plain language. *City of Seattle v. Holifield*, 170 Wn.2d 230, 237, 240 P.3d 1162 (2010). "If the plain language is subject to one interpretation only, our inquiry ends because plain language does not require construction." *Holifield*, 170 Wn.2d at 237.

Further, the common law preserves citizens' freedom to contract. *Little Mountain Estates Tenants Ass'n v. Little Mountain Estates MHC, LLC*, 169 Wn.2d 265, 270 n.3, 236 P.3d 193 (2010) ("'Courts do not have the power, under the guise of interpretation, to rewrite contracts which the parties have deliberately made for themselves.'") (quoting *Clements v. Olsen*, 46 Wn.2d 445, 448, 282 P.2d 266 (1955)). "'It is black letter law of contracts that the parties to a contract shall be bound by its terms.'" *Torgerson v. One Lincoln Tower, LLC*, 166 Wn.2d 510, 517, 210 P.3d 318 (2009) (quoting *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 344, 103 P.3d 773 (2004)). In construing a contract, we give the parties' intent as expressed in the instrument's plain language controlling weight, and we give words in a contract their ordinary meaning. *Cambridge Townhomes, LLC v. Pac. Star Roofing, Inc.*, 166 Wn.2d 475, 487, 209 P.3d 863 (2009). We may discover parties' intent from "'viewing the contract as a whole, the subject

4

matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties.'" *In re Marriage of Litowitz*, 146 Wn.2d 514, 528, 48 P.3d 261, 53 P.3d 516 (2002) (internal quotation marks omitted) (quoting *Scott Galvanizing, Inc. v. Nw. EnviroServices, Inc.*, 120 Wn.2d 573, 580-81, 844 P.2d 428 (1993)), *cert. denied*, 537 U.S. 1191 (2003).

DISCUSSION

"Enacted in 1977, the MHLTA regulates and determines the legal rights, remedies, and obligations arising from a rental agreement between a mobile home lot tenant and a mobile home park landlord." *Holiday Resort Cmty. Ass'n v. Echo Lake Assocs., LLC*, 134 Wn. App. 210, 222, 135 P.3d 499 (2006), *review denied*, 160 Wn.2d 1019 (2007). The MHLTA requires landlords to provide a written agreement to a tenant at the beginning of the tenancy and that rental terms are one year unless otherwise specified. *Holiday Resort*, 134 Wn. App. at 223. It also provides that an agreement of any duration will be automatically renewed for the term of the original agreement, unless the parties agree to a different specified term, and that a landlord may terminate a rental agreement for cause. Former RCW 59.20.080 (2003); RCW 59.20.090(1).

1. THE RENT INCREASE LIMITATION IS ENFORCEABLE BECAUSE THE MHLTA DOES NOT PROHIBIT IT

The MHLTA requires rental agreements to contain certain provisions and prohibits others. Former RCW 59.20.060 (2006). Any term in a rental agreement that conflicts with the MHLTA is unenforceable. Former RCW 59.20.060. Further, a landlord who seeks to *increase* rent can do so "upon expiration of the term of a rental agreement of any duration" by notifying the tenant in writing three months prior to the effective date of any rent increase. RCW

59.20.090(2); *McGahuey v. Hwang*, 104 Wn. App. 176, 182, 15 P.3d 672, *review denied*, 144 Wn.2d 1004 (2001). But nothing in the MHLTA prohibits a landlord from including in a rental agreement a limit on future rent increases. *See* former RCW 59.20.060.

Because the MHLTA does not prohibit limits on future rent increases, such a limitation is enforceable. *Little Mountain* is helpful here. 169 Wn.2d 265. There, the owner of a manufactured home community intended for the elderly offered a 25-year lease to entice new residents with rent increases tied to the Consumer Price Index. *Little Mountain*, 169 Wn.2d at 267. The lease provided that the 25-year term was available for only the original tenant and that if the original tenant assigned its lease to another party, the assigned lease would be for one or two years. *Little Mountain*, 169 Wn.2d at 267. Later, tenants who assigned their leases claimed that the assignment provision violated the MHLTA. *Little Mountain*, 169 Wn.2d at 268. The Supreme Court disagreed and held that the assignment provision was enforceable because it did not violate the MHLTA; the court also explained that the MHLTA did not prohibit landlords and tenants from agreeing to rental terms that would be determined by a formula or be linked to a tenant's future decision to assign the lease.[4] *Little Mountain*, 169 Wn.2d at 268, 271.

Similarly here, Tison's Agreement specifically provided that her rent would be determined by a formula: no more than a $10 monthly rent increase every two years. This provision is enforceable because it does not violate the MHLTA. When a lease provision does not violate the MHLTA, we must enforce the parties' agreement as written and as the parties intended. *Cambridge Townhomes*, 166 Wn.2d at 487; *Torgerson*, 166 Wn.2d at 517. The parties

---

[4] Tenants also argued that the assignment clause also violated the Consumer Protection Act (CPA), ch. 19.86 RCW. Division One of this court remanded the CPA claim for further factual findings to determine whether the tenants could prove a CPA violation so the CPA claim was not before the Supreme Court. *Little Mountain*, 169 Wn.2d at 271.

here clearly intended for Tison's monthly rent to not increase more than $10 every two years as their Agreement's plain language provides.

In addition to *Little Mountain*, Western Plaza cites *McGahuey*, 104 Wn. App. 176, and *Seashore Villa Ass'n v. Hagglund Family Ltd. Partnership*, 163 Wn. App. 531, 260 P.3d 906 (2011), *review denied*, 173 Wn.2d 1036 (2012). But *Seashore Villa* is distinguishable and does not help Western Plaza. There the landlord sought to transfer the duty to care for permanent structures in the mobile home park to the tenants by agreement, but the MHLTA specifically prohibited the landlord from transferring the duty of care for those structures. *Seashore Villa*, 163 Wn. App. at 535-36, 542. So we held that the parties could not contract around a specific MHLTA provision and that the landlord violated the MHLTA by asking the tenants to do so. *Seashore Villa*, 163 Wn. App. at 542. But here, because the MHLTA does not specifically prohibit parties from agreeing to a rent increase limitation, *Seashore Villa* does not help Western Plaza's argument and we cannot ignore the limitation that the parties explicitly agreed to.

*McGahuey* is also distinguishable. There, we agreed that the landlord could properly require tenants to begin paying for utilities in addition to base rent because the MHLTA did not prohibit landlords from asking the tenants to do so, so long as the tenants paid only their actual utility cost and because nothing in their rental agreements prohibited it either.[5] *McGahuey*, 104 Wn. App. at 180-84.

Further, Western Plaza agreed at oral argument that the original landlord, Erlitz, was bound to the Agreement's rent increase limitation, and it also conceded that Western Plaza bought the mobile home park subject to all the leases that were in place at the time of the

---

[5] Because the *McGahuey* parties' agreement did not prohibit such a fee increase, we did not address a situation like the one we have here, where Tison's Agreement does restrict future rental increases.

purchase. Wash. Court of Appeals oral argument, *Western Plaza v. Tison*, No. 43514-4-II (October 14, 2013), at 19 min., 30 sec.—20 min., 30 sec. (on file with court). Therefore, Western Plaza took Tison's lease subject to the Agreement's specific provision providing for future rent increase limitations. We cannot ignore that provision, as Western Plaza seeks to do. And because it does not violate the MHLTA, we must enforce it. *See Torgerson*, 166 Wn.2d at 517.

2. THE AGREEMENT'S RENT INCREASE LIMITATION AUTOMATICALLY RENEWED EACH YEAR

Western Plaza argues that the limit on rent increases terminated after one year. We disagree. Although the Agreement's term was for one year, under the MHLTA, the Agreement thereafter automatically renewed each year for another year, meaning that all its terms also automatically renewed unless the parties agreed to change the terms. RCW 59.20.090(1). Western Plaza asserts that at the end of each year it could modify the rent amount by giving Tison proper notice, relying on RCW 59.20.090 and *McGahuey*, 104 Wn. App. at 181-83. Although RCW 59.20.090 allows rent increases, it does not control the result here where the landlord specifically agreed to limit *the amount* of future rent increases. Similarly, *McGahuey* is not helpful because it does not address whether an agreement to limit future rent increases is enforceable. We agree with Tison that Western Plaza may not ignore the rent increase limitation at the end of the first year.

Because the express future rent increase limitation provision is not in conflict with the MHLTA, Western Plaza bought the park subject to Tison's Agreement, and because Tison's Agreement renews each year, we conclude that the rent increase limitation is enforceable against Western Plaza. We reverse the unlawful detainer judgment, including costs and attorney fees,

No. 43514-4-II

and instead remand for entry of summary judgment in Tison's favor, including costs and attorney fees.

ATTORNEY FEES ON APPEAL

Tison requests attorney fees on appeal. Under RAP 18.1, the prevailing party is entitled to attorney fees and costs on appeal if requested in the party's opening brief and if "applicable law grants to a party the right to recover." RAP 18.1(a)-(b). The MHLTA grants Tison a right to recover. It provides that "[i]n any action arising out of this chapter, the prevailing party shall be entitled to reasonable attorney's fees and costs." RCW 59.20.110. Similarly, the Agreement here includes an attorney fee provision. Therefore, Tison is entitled to her attorney fees and costs upon compliance with RAP 18.1.

We reverse and remand for entry of summary judgment in Tison's favor, including costs and attorney fees.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

HUNT, J.

WORSWICK, C.J.

9