# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| IN RE: | No. 47766-1-II |
| NARROWS REAL ESTATE, INC., dba RAINIER VISTA MOBILE HOME PARK, | |
| Respondent/Cross-Appellant, | |
| v. | |
| MHDRP, CONSUMER PROTECTION DIVISION, OFFICE OF THE ATTORNEY GENERAL, | PUBLISHED OPINION |
| Appellants/Cross-Respondents. | |

LEE, J. — Lucila Santiago filed a complaint with the Manufactured/Mobile Home Dispute Resolution Program (MHDRP)[1], complaining that her landlord, Narrows Real Estate, Inc., doing business as Rainier Vista Mobile Home Park (Rainier Vista), was overcharging her for the water utility. After an investigation, the MHDRP issued a notice of violation, finding that Rainier Vista

---

[1] The MHDRP is administered by the attorney general and provides "manufactured/mobile home community landlords and tenants with a cost-effective and time-efficient process to resolve disputes involving alleged violations of the [M]anufactured/[M]obile [H]ome [L]andlord-[T]enant [A]ct" (MHLTA). RCW 59.30.030(1), (2).

had charged tenants more than the "actual utility costs" in violation of RCW 59.20.070(6)[2] and ordering Rainier Vista to reimburse the tenants $35,240—the difference between what the utility provider charged Rainier Vista for water and what Rainier Vista charged its tenants for water. Rainier Vista appealed to the Office of Administrative Hearings (OAH). The OAH affirmed the finding that Rainier Vista had violated RCW 59.20.070(6) on partial summary judgment, but imposed its own remedy by using a different reimbursement calculation that totaled $88,445.77. Rainier Vista appealed the OAH orders to the superior court, which affirmed that a RCW 59.20.070(6) violation had occurred but reversed the OAH's remedy based on a different reimbursement calculation than that used by the MHDRP. Rainier Vista then appealed to this court the superior court's order affirming the violation, and the MHDRP appealed the superior court's reversal of the OAH's remedy.

On appeal to this court, we are asked to determine: (1) the meaning of "actual utility costs" as it is used in RCW 59.20.070(6); (2) whether the MHDRP had authority to issue a notice of violation that included Rainier Vista's violations with respect to tenants who had not filed a complaint; (3) whether Rainier Vista was denied due process during the MHDRP's investigation and the OAH's proceedings; and (4) whether the OAH exceeded its statutory authority when it imposed its own remedy by using a different reimbursement calculation than that used by the MHDRP in determining Rainier Vista's excessive charges for water.

---

[2] RCW 59.20.070(6) provides that a landlord shall not:

> Charge to any tenant a utility fee in excess of actual utility costs or intentionally cause termination or interruption of any tenant's utility services, including water, heat, electricity, or gas, except when an interruption of a reasonable duration is required to make necessary repairs.

We hold that (1) the term "actual utility costs," as it is used in RCW 59.20.070(6), prohibits a landlord from charging tenants a utility fee that exceeds the amount that the landlord can show was in fact charged by, or paid to, the utility provider for providing the utility; (2) the MHDRP had discretion to investigate complaints and is required to consider the impact of the complained-of violations on the entire community; and (3) Rainier Vista was not denied due process. However, we hold that the OAH exceeded its statutory authority when it imposed its own remedy by utilizing a different reimbursement calculation than that used by the MDHRP. Therefore, we affirm the OAH's determination that Rainier Vista violated RCW 59.20.070(6), but we reverse the OAH's determination of the amount of the overcharge and remand for the OAH to determine whether a preponderance of the evidence supports the MHDRP's calculation of the overcharge.

## FACTS

A.    BACKGROUND

Rainer Vista is a mobile home park in Olympia. Santiago rented one of the approximately 151 lots in Rainier Vista. The rental agreement between Rainier Vista and Santiago provided in pertinent part:

> 2. ADDITIONAL CHARGES. In addition to the monthly rental and any other charges or fees specified in this Agreement, Tenant agrees to pay to Landlord the following charges: Water Service

Administrative Record (AR) at 587; Clerk's Papers (CP) at 592.

The city of Lacey (City) provided water to Rainier Vista. There was one water meter for the entire mobile home park that calculated the amount of water the City provided to Rainier Vista. The individual lots in Rainier Vista did not have their own water meters to measure the water use

3

of the individual lot. Once the water from the City reached Rainier Vista, Rainier Vista used its own infrastructure to distribute the water to the tenants.

Rainier Vista charged tenants a monthly fee for "water service." AR at 581. Rainier Vista calculated its "water service" charge for each lot based on the estimated occupancy[3] of each lot, the cost of the water from the City, and the estimated costs Rainier Vista incurred in getting the water to each lot. AR at 580-82. More specifically, Rainier Vista calculated the amount charged to each lot by first adding the amount the City charged for the water to costs Rainier Vista estimated it incurred in getting the water to each lot,[4] then dividing that sum by the total number of occupants estimated to be in the park, and finally multiplying that fraction by the number of occupants estimated to reside at each lot.

B.    THE COMPLAINT AND MHDRP'S DECISION

On June 29, 2011, Santiago filed her complaint against Rainier Vista with the MHDRP. Santiago claimed that the water bills she received from Rainier Vista were excessive. AR at 948-51. The MHDRP conducted an investigation. The investigation found that:

- in 2010, the City charged Rainier Vista $106,090.06 for the water the City provided; the same year, Rainier Vista charged its tenants $112,494.48 for the water service;

- in 2011, the City charged Rainier Vista $116,022.36 for the water the City provided; the same year, Rainier Vista charged its tenants $131,613.28 for the water service;

---

[3] The estimated occupancy was based on the site manager's observations, "When the site manager repeatedly noticed more cars at a particular lot, or if the site manager did not recognize a person staying at a lot, the site manager noted an increase in the number of occupants of that lot." CP at 52 (unchallenged finding).

[4] The costs Rainier Vista estimated it incurred each month in getting the water to each lot included maintenance labor, billing labor, notice expenses, collection expenses, and expenses to "defend water billing in 4 prior AG complaints." AR at 582 (some capitalization omitted).

- in January through October of 2012, the City charged Rainier Vista $124,262.34 for the water the City provided; for the same months, Rainier Vista charged its tenants $137,507.00 for the water service.

CP at 32-33, 51-52.[5] Based on its investigation, the MHDRP concluded that Rainier Vista had overcharged its tenants by $35,240. The MHDRP calculated this amount based on the sum of each year's differences between what the City charged Rainier Vista and what Rainier Vista charged its tenants.

The MHDRP issued a notice of violation. The notice of violation stated that Rainier Vista violated RCW 59.20.070(6) of the Manufactured/Mobile Home Landlord-Tenant Act (MHLTA) when it "charged tenants a utility fee in excess of the actual utility cost." AR at 9. The notice of violation stated that Rainier Vista was charging more than the "actual utility cost" because it based each lot's bill on a "subjective" calculation of the number of occupants and Rainier Vista was charging tenants more than it was being charged by the City. AR at 9. As a result, the MHDRP ordered Rainier Vista to reimburse tenants the $35,240 within 30 days.

C.    APPEAL OF MHDRP'S DECISION

Rainier Vista appealed the notice of violation to the OAH. Rainier Vista and the MHDRP filed cross motions for summary judgment with the OAH. The OAH granted partial summary judgment to the MHDRP and denied Rainier Vista's motion.[6] The OAH's order ruled that

---

[5] Rainier Vista does not dispute these figures. Rainier Vista does dispute whether it was entitled to charge its tenants more than it was charged by the City.

[6] WAC 10-08-135 states, "A motion for summary judgment may be granted and an order issued if the written record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

as a matter of law that Rainier [Vista] violated RCW 59.20.070(6) from 2010 through 2012, by charging tenants a utility fee for water in excess of the actual utility costs for water, such that Rainier [Vista] collected more money from the tenants than the amount that Rainier paid to the City of Lacey for the cost of water. However, the amount of the overcharge remains an issue of fact and will be decided at the hearing.

CP at 29. The OAH's order further ruled that the MHDRP could find a violation that pertained to all tenants, rather than just the complaining tenant.

The OAH administrative law judge held a hearing to determine the amount of the overcharge. To support identifiable expenses, Rainier Vista presented estimates and incomplete documentation that had not been produced before and was not confirmed. As such, the OAH administrative law judge ruled that Rainier Vista "did not present sufficient evidence to support identifiable expenses for the cost of water that would offset the overcharge." CP at 53.

After the hearing, the OAH issued a Final Order. The Final Order affirmed the MHDRP's notice of violation. However, while the notice of violation required Rainier Vista to reimburse the $35,240 overcharge to the tenants, the Final Order provided a different amount. The Final Order stated that the proper calculation was to determine the amount each tenant should have been charged each year and to reimburse each tenant by the amount he or she was overcharged. The OAH determined that the tenants were overcharged a total of $88,445.77.

D.     APPEAL TO SUPERIOR COURT

Rainier Vista appealed the OAH's Final Order to the superior court.[7] The superior court concluded that "Rainier [Vista] violated RCW 59.20.070(6) when it charged complainant Lucila

---

[7] "The order of the [OAH] administrative law judge constitutes the final agency order of the attorney general [who administers the MHDRP] and may be appealed to the superior court under chapter 34.05 RCW." RCW 59.30.040(10).

6

Santiago more than the actual utility cost for water"; the MHDRP "did not have statutory authority to expand its investigation beyond Ms. Santiago's original complaint to encompass the entire Park"; and the MHDRP "did not have statutory authority to require that Rainier [Vista] reimburse tenants who had not filed a complaint." CP at 907-08. Accordingly, the superior court ordered Rainier Vista to reimburse Santiago $1,796.11. MHDRP appeals and Rainier Vista cross appeals.

ANALYSIS

A.    LEGAL PRINCIPLES

The Washington Administrative Procedures Act (APA)[8] governs our review of this case. RCW 59.30.040(10). Under the APA, the party challenging an agency action has the burden of demonstrating the action is invalid and must show substantial prejudice. RCW 34.05.570(1)(a), (d). A reviewing court may reverse an administrative order if the order violates the constitution, exceeds statutory authority, or involves an error in interpreting or applying the law. RCW 34.05.570(3)(a)-(b), (d).

"We sit in the same position as the superior court and apply the APA to the administrative record." *Cornelius v. Dep't of Ecology*, 182 Wn.2d 574, 585, 344 P.3d 199 (2015). We review questions of law, and the agency's application of the law to the facts, de novo, but we afford "great weight" to the agency's interpretation of law "where the statute is within the agency's special expertise." *Id.* at 585. Where the agency makes a finding that goes unchallenged, that finding becomes a verity on appeal. *Darkenwald v. Emp't Sec. Dep't*, 183 Wn.2d 237, 244, 350 P.3d 647 (2015). Where, as here, the rulings were made on summary judgment, we review those rulings de novo. *Cornelius*, 182 Wn.2d at 585.

_____

[8] Ch. 34.05 RCW.

B.       TIMING OF CHALLENGES TO THE OAH'S FINDINGS OF FACT

As an initial matter, the MHDRP contends that the findings that Rainier Vista did not challenge in its appeal to the superior court are now verities on appeal to this court. Br. of MHDRP at 13. In its petition for review to the superior court, Rainier Vista broadly referenced the specific findings of fact challenged in this appeal; however, Rainier Vista provides no argument in its briefing as to how findings of fact 6.11.4, 6.11.8, 6.23, 6.24, 6.25, and 6.29 are erroneous. Therefore, findings of fact 6.11.4, 6.11.8, 6.23, 6.24, 6.25, and 6.29 are verities on appeal. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (holding that where claimed errors are not supported by argument, the assignments of error are waived).

With regard to the other challenged findings of fact specified in Rainier Vista's assignments of error, the nature of Rainier Vista's challenges to the Final Order before this court were raised in its appeal to the superior court, are adequately clear and argued in its briefing to this court, and the MHDRP has had the opportunity to adequately respond. RAP 1.2(a) permits liberal interpretation of our court rules and allows appellate review in spite of technical violations where proper assignment of error is lacking but the nature of the challenge is clear and the challenged findings are set forth in the party's brief. *Smith v. Emp't Sec. Dep't*, 155 Wn. App. 24, 33, 226 P.3d 263 (2010). Therefore, in the absence of any claimed prejudice to MHDRP, we address the issues associated with the challenged findings, except for findings of fact 6.11.4, 6.11.8, 6.23, 6.24, 6.25, and 6.29.

C.       "ACTUAL UTILITY COSTS"

Rainier Vista argues (1) that the MHDRP and the OAH acted without statutory authority and erroneously interpreted the law in determining that Rainier Vista was not allowed to charge

more than the "actual utility costs" for water, as the term is used in RCW 59.20.070(6), and (2) that the term "actual utility costs" does not mean only the cost that the City charged Rainier Vista for the water but also includes the costs Rainier Vista incurred in distributing the water throughout the park. We hold that the MHDRP and the OAH did not act outside their statutory authority or erroneously interpret the law in determining that the term "actual utility costs" means only those costs that the City charged Rainier Vista for water.

1. "Water Service" Charge Could Not Be More than the "Actual Utility Costs"

Rainier Vista argues that the "water service" charge in the rental agreement included "the entirety of the infrastructure and labor required to supply water to the tenants, as well as [the water's] disposal," because such interpretation is "[i]nherent in the term 'service.'"[9] Br. of Rainier Vista at 30. In support, Rainier Vista argues that the rental agreement is a contract and defining the term "water service" requires this court to engage in contract interpretation. Br. of Rainier Vista at 28-30. This argument fails because the parties are not allowed to agree to contract terms that contradict the statutory provision that prohibits a landlord from charging a utility fee in excess of the actual utility costs.

---

[9] Rainier Vista did not challenge on appeal finding of fact 6.11.9, in which the OAH found that "[t]the actual cost of water from the City of Lacey did not include the cost of sewer/septic services," despite challenging several other of the findings of fact included under 6.11. Br. of Rainier Vista at 2 (challenging "Finding of fact 6.11, including subfindings of fact 6.11.3, 6.11.4, 6.11.8"); CP at 54. However, because Rainier Vista did broadly challenge finding of fact 6.11, under which finding of fact 6.11.9 is included, and Rainier Vista devoted a substantial amount of its oral argument to sewer costs being including in "water service," we address the issue here.

RCW 59.20.060(1)(i) requires the rental agreement to list all of the "utilities, services, and facilities," that are available, along with "the nature of the fees, if any, to be charged." The rental agreement did not list sewer services as a utility that would be provided to the tenants. *See* AR at 587; CP at 592. Therefore, Rainier Vista cannot recover fees associated with the sewer utility.

RCW 59.20.070(6) states, "A landlord shall not: . . . Charge to any tenant a utility fee in excess of actual utility costs." Generally, Washington courts recognize the overarching freedom to contract, but when provisions of a contract are prohibited by statute, those contract provisions are unenforceable. *Jordan v. Nationstar Mortg., LLC*, 185 Wn.2d 876, 883, 374 P.3d 1195 (2016). Accordingly, "[a]ny term in a rental agreement that conflicts with the MHLTA is unenforceable." *W. Plaza, LLC v. Tison*, 180 Wn. App. 17, 23, 322 P.3d 1 (2014), *aff'd*, 184 Wn.2d 702, 364 P.3d 76 (2015).

Here, Rainier Vista charged its tenants a fee for "water service." AR at 587; CP at 592. Under RCW 59.20.070(6), the fee that Rainier Vista charges for "water service," may not be more than the "actual utility costs" for water, unless additional expenses are listed and the nature of the additional expenses are identified in the rental agreement as costs independent from the utility cost. AR at 587; CP at 592; RCW 59.20.060(1)(i). Therefore, a contract provision in the rental agreement between Rainier Vista and its tenants that allowed Rainier Vista to include in its "water services" fee an amount in excess of the "actual utility costs" that is not otherwise identified in the rental agreement is unenforceable. AR at 587; CP at 592; RCW 59.20.070(6); *Jordan*, 185 Wn.2d at 883. The issue here is what constitutes the "actual utility costs," as the term is used in RCW 59.20.070(6).

2. "Actual Utility Costs" Are the Costs Charged By or Paid to the Utility Provider

Rainier Vista argues that the term "actual utility costs," as it is used in RCW 59.20.070(6), is the amount of money it costs Rainier Vista to deliver the water to the tenant, rather than the amount of money it costs the City to deliver the water to Rainier Vista. Br. of Rainier Vista at 27. We disagree.

Both parties cite *McGahuey v. Hwang*, 104 Wn. App. 176, 183, 15 P.3d 672, *review denied*, 144 Wn.2d 1004 (2001), in support of their respective definitions for "actual utility cost[s]." Br. of Rainier Vista at 31; Br. of MHDRP at 16. But *McGahuey* does not address whether the term "actual utility costs" includes the expense incurred by the landlord to deliver the utility to the tenant after the utility company has delivered the utility to the landlord. Rather, *McGahuey* does no more than restate that "the landlord may not charge a utility fee in excess of actual utility costs," without further discussion as to what the "actual utility costs" may include. 104 Wn. App. at 182, 183.

Resolution of this issue requires statutory interpretation. Our fundamental objective in interpreting a statute is to effectuate the legislature's intent. *Darkenwald*, 183 Wn.2d at 244-45. Statutory interpretation is a question of law we review de novo. *Lawson v. City of Pasco*, 168 Wn.2d 675, 678, 230 P.3d 1038 (2010).

Where a term is not defined in the statute, but the statutory meaning is plain on its face, we give effect to that plain meaning. *Darkenwald*, 183 Wn.2d at 245. "When determining a statute's plain meaning, we consider 'the ordinary meaning of words, basic rules of grammar, and the statutory context to conclude what the legislature has provided for in the statute and related statutes.'" *Id.* (quoting *In re Forfeiture of One 1970 Chevrolet Chevelle*, 166 Wn.2d 834, 838-39, 215 P.3d 166 (2009)). If the statute's meaning remains susceptible to more than one reasonable interpretation, we will consider extrinsic aids such as legislative history and the circumstances surrounding its enactment. *Id.*

The term "actual utility costs" is not defined in the MHLTA. Ch. 59.20 RCW. However, a review of the ordinary meaning of the words, in conjunction with the other provisions in the MHLTA, shows that RCW 59.20.070(6) prohibits a landlord from charging tenants a utility fee

11

that exceeds the amount the landlord can show was in fact charged by, or paid to, the utility provider for providing the utility.

### a. Ordinary meaning of "actual utility costs"

#### i. "actual"

As it is used in RCW 59.20.070(6), the word "actual" is an adjective that describes the costs of the utility. Thus, the definition of "actual" is "existing in fact or reality: really acted or acting or carried out − contrasted with *ideal* and *hypothetical* . . . ; distinguished from *apparent* and *nominal* <the ["actual"] cost of goods>." WEBSTER'S THIRD INTERNATIONAL DICTIONARY 22 (1969).

#### ii. "utility"

The word "utility" has many definitions and can be used as a noun or as an adjective. WEBSTER'S, *supra*, at 2525. It is clear after reviewing the remainder of RCW 59.20.070(6), and the use of the words "utility" and "utilities" throughout the MHLTA, that "utility" in "actual utility costs" was used by the legislature as an adjective to describe "costs." And, as an adjective, "utility" is used to describe nouns such as "hook-ups," "assessments," "charges," "fee[s]," and "services." RCW 59.20.060(1)(k), (2)(c)(ii), RCW 59.20.070(6), RCW 59.20.074(4).

#### iii. "costs"

As it is used in "actual utility costs," the word "costs" is a noun. Accordingly, "costs" is defined as "the amount or equivalent paid or given or charged or engaged to be paid or given for anything bought or taken in barter or for service rendered." WEBSTER'S, *supra*, at 515.

Thus, using the dictionary definitions, "actual utility costs" in RCW 59.20.070(6) is the amount paid or charged, that can be shown to exist in fact, for the utility. Using this definition in

place of "actual utility costs" results in the relevant portion of RCW 59.20.070(6) stating: "A landlord shall not . . . [c]harge to any tenant a utility fee in excess of [the amount paid or charged, that can be shown to exist in fact, for the utility]."

b. Other provisions of the MHLTA

Other provisions within the MHLTA demonstrate that the term "actual utility costs" is limited to those costs that Rainier Vista was charged by or paid to the City for water. For instance, RCW 59.20.060(1)(i) requires the rental agreement to list all of the "utilities, services, and facilities," that are available, along with "the nature of the fees, if any, to be charged." With this provision, landlords can charge tenants for the costs associated with improvements in, and maintenance to, the park's infrastructure. RCW 59.20.060(1)(i). However, while the MHLTA provides for such expenses, it also requires that if landlords elect not to include those expenses in the base rent, then they must identify the nature of those associated fees in the rental agreement, rather than add such expenses to the cost of the utilities. RCW 59.20.060(1)(i).

Additionally, RCW 59.20.130 sets forth the maintenance duties of the landlord. Among those duties, the landlord is required to:

> (2) Maintain the common premises and prevent the accumulation of stagnant water and to prevent the detrimental effects of moving water when such condition is not the fault of the tenant;

> (3) Keep any shared or common premises reasonably clean, sanitary, and safe from defects to reduce the hazards of fire or accident;

> (4) Keep all common premises of the mobile home park, and vacant mobile home lots, not in the possession of tenants, free of weeds or plant growth noxious and detrimental to the health of the tenants and free from potentially injurious or unsightly objects and condition;

> (5) Exterminate or make a reasonable effort to exterminate rodents, vermin, or other pests dangerous to the health and safety of the tenant whenever infestation

exists on the common premises or whenever infestation occurs in the interior of a mobile home, manufactured home, or park model as a result of infestation existing on the common premises;

(6) Maintain and protect all utilities provided to the mobile home, manufactured home, or park model in good working condition. Maintenance responsibility shall be determined at that point where the normal mobile home, manufactured home, or park model utilities "hook-ups" connect to those provided by the landlord or utility company;

. . . .

(9) Maintain roads within the mobile home park in good condition.

Because all of the landlord's maintenance duties are included in one statute, the context suggests that the legislature intended all of the landlord's maintenance obligations be viewed and treated similarly. That the landlord's obligations to maintain the utilities, common premises, and roads should be viewed as similar obligations is further emphasized with the legislature's adoption of other statutes addressing how landlords charge for the utilities they are obligated to provide. *See, e.g.*, RCW 59.20.060(2)(c) (allowing the rental agreement to include an "escalation clause for a pro rata share" of increases and decreases in "utility assessments or charges"); RCW 59.20.070(6) (prohibiting charges to the tenants in excess of the "actual utility costs").

Thus, the context of the statute shows that the legislature intended for the landlord's maintenance of the park's utility infrastructure to be an obligation similar to the landlord's maintenance of the park's road and common premises infrastructure. The MHLTA allows landlords to charge for the associated maintenance expenses, but it requires that if a landlord chooses to charge for those expenses, the landlord must separately set forth those fees in the rental agreement. RCW 59.20.060(1)(i). Allowing "actual utility costs" to include all other maintenance

obligations would circumvent the requirement in RCW 59.20.060(1)(i) that rental agreement list the nature of any fees charged in association with the utilities, services, and facilities.[10]

        c. "Actual utility costs"

"Actual utility costs" are limited to those costs that the Rainier Vista was charged by or paid to the City for water. Therefore, RCW 59.20.070(6) prohibits a landlord from charging tenants a utility fee that exceeds the amount that was in fact charged by, or paid to, the utility company for providing the utility.

Also, the statute requires that only the "actual utility costs" can be charged to the tenants. RCW 59.20.070(6). All of the charges Rainier Vista added to what it was actually charged by the City were "estimate[d]." *See* AR at 582. That the OAH determined that the definition of "actual" precludes estimation is not "willful and unreasoning," especially because the definition of "actual" requires that the subject "exist[] in fact," and not be "hypothetical." WEBSTER'S, *supra*, at 22 (emphasis omitted).[11]

Thus, because "actual utility costs" means only those costs Rainier Vista was charged by or paid to the City for water, we hold that the OAH did not err.

---

[10] To the extent the phrase remains ambiguous, a reasonable interpretation of what the legislature intended is the actual bill from the utility company that is paid for the utility. As can be seen through the other provisions in the MHLTA, the legislature sought to have transparency in "the nature of the fees, if any," that would be charged to tenants. RCW 59.20.060(i).

[11] Rainier Vista's citations to cases recognizing the use of estimations for the purpose of calculating damages are distinguished because none of those cases dealt with a statute that allowed only the "actual" "costs" to be passed on. RCW 59.20.070(6); Br. of Rainier Vista at 35.

D.      EXTENT OF THE MHDRP'S AUTHORITY

Rainier Vista argues that the MHDRP acted without statutory authority when it investigated the harm that Rainier Vista's billing practices had on other tenants.  Specifically, Rainier Vista argues that by "unilaterally expand[ing] the scope of its delegated authority to advocate on behalf of other nonparty tenants who had not requested dispute resolution," the MHDRP turned Santiago's complaint "into a *de facto* class action lawsuit by all of Rainier Vista's tenants."  Br. of Rainier Vista at 1, 17.  In support, Rainier Vista cites proposed legislation that sought to broaden the MHDRP's authority and an Annual Report from the attorney general.  We hold that plain language of RCW 59.30.040 gives the MHDRP discretion to investigate complaints and requires the MHDRP to consider the impact of the complained-of violations on the entire community.

RCW 59.30.040 details the complaint process for the MHDRP.  After the MHDRP receives a complaint, it must investigate the alleged violation, and it has discretion in how it conducts the investigation.  RCW 59.30.040(3).  If the MHDRP determines that there was a violation of the MHLTA, the MHDRP must specify in its notice of violation the corrective action required, the resulting penalties if corrective action is not taken, and the process for contesting the notice of violation.  RCW 59.30.040(5)(a).

The MHDRP also may order a party to "cease and desist from an unlawful practice and take affirmative actions that in the judgment of the attorney general will carry out the purposes of this chapter."  RCW 59.30.040(7).  Such "affirmative actions may include, but are not limited to" refunds of "improper fees, charges, and assessments," as well as other reasonable actions that will correct a statutory violation.  RCW 59.30.040(7)(a), (c).

16

When a party fails to take corrective action, the MHDRP "must consider the severity and duration of the violation and the violation's impact on other community residents when determining the appropriate amount of a fine or the appropriate penalty." RCW 59.30.040(6). Finally, the existence of the MHDRP "does not limit the right of landlords or tenants to take legal action against another party as provided in chapter 59.20 RCW or otherwise. Exhaustion of the administrative remedy provided in [the MHLTA] is not required before a landlord or tenants may bring a legal action." RCW 59.30.040(13).

The MHLTA uses broad language in authorizing the MHDRP to act. For example, the MHLTA authorizes the MHDRP to investigate complaints "at its discretion." RCW 59.60.040(3). The MHLTA also authorizes the MHDRP to exercise its judgment to order refunds of improper fees and charges. RWC 59.30.040(7). And, the MHLTA does not include language that limits the MHDRP's investigatory or disciplinary authority.

Moreover, the MHLTA *requires* the MHDRP to consider the "impact on other community residents when determining the appropriate amount of a fine or the appropriate penalty." RCW 59.30.040(6). In doing so, the MHLTA recognizes that violations suffered by one resident can also be suffered by other residents and expressly directs the MHDRP to take that into consideration in exercising its discretion to impose penalties. This requirement inherently requires that the MHDRP investigate the impact of a violation on other residents in the park.

Thus, the plain language of RCW 59.30.040 gives the MHDRP discretion to investigate complaints, requires the MHDRP to consider the impact of the complained-of violation on the community residents, at least where corrective action has not been taken, and provides the MHDRP with the authority to issue orders requiring a party to cease and desist from unlawful

practices and take affirmative action by requiring refunds of charges collected in violation of the MHTLA. RCW 59.30.040(6)-(7). Therefore, we hold that the MHDRP did not act outside its statutory authority.[12]

E.      PROCEDURAL DUE PROCESS

Rainier Vista argues that it was denied procedural due process when the OAH did not require the MHDRP to conduct a fair investigation in response to Santiago's complaint and rejected evidence of expenses included in the water service charge. We review alleged violations of due process de novo. *State ex rel. Wash. State Pub. Disclosure Comm'n v. Permanent Offense*, 136 Wn. App. 277, 293, 150 P.3d 568 (2006) ("Alleged violations of due process, as well as the constitutional entitlement to an administrative hearing, are questions of law that we review de novo"), *review denied*, 162 Wn.2d 1003 (2007).

We hold that Rainier Vista has not shown that its due process rights were violated. As explained above, RCW 59.20.070(6) prohibits a landlord from charging tenants a utility fee that exceeds the amount that the landlord can show was in fact charged by, or can show it in fact paid to, the utility company for providing the utility. Therefore, the fees that Rainier Vista charged in addition to the costs charged by the City, regardless of whether they were actual or estimated, was irrelevant to the inquiry—the inquiry stopped when the MHDRP discovered Rainier Vista was charging tenants "a utility fee in excess of actual utility costs." RCW 59.20.070(6).

---

[12] Rainier Vista cites to proposed legislation and an attorney general report to the legislature in 2009 to support its position. Br. of Rainier Vista at 17-18, 17 n.5. We do not consider extrinsic evidence because the statute is plain on its face. *Darkenwald*, 183 Wn.2d at 244 (stating that where the meaning of a statute is plain on its face, courts do not need to consider extrinsic aids such as legislative history).

No. 47766-1-II

F.    THE OAH HEARING

Rainier Vista argues that the OAH exceeded its statutory authority when it imposed its own

remedy for Rainier Vista's excessive charges for water by using a different reimbursement

calculation.  We agree.

RCW 59.30.040(10) states:

> The administrative law judge appointed under chapter 34.12 RCW shall:
>
> (a) Hear and receive pertinent evidence and testimony;
>
> (b) Decide whether the evidence supports the attorney general finding by a preponderance of the evidence; and
>
> (c) Enter an appropriate order within thirty days after the close of the hearing and immediately mail copies of the order to the affected parties.
>
> The order of the administrative law judge constitutes the final agency order of the attorney general and may be appealed to the superior court under chapter 34.05 RCW.

And, RCW 34.05.020 states in relevant part:

> Nothing in this chapter may be held to diminish the constitutional rights of any person or to limit or repeal additional requirements imposed by statute or otherwise recognized by law.  Except as otherwise required by law, all requirements or privileges relating to evidence or procedure shall apply equally to agencies and persons.

*Conway v. Department of Social & Health Services* held that an administrative law judge

(ALJ) had authority under the APA to review only the propriety of the remedy that an agency

imposed, and not to impose a different remedy.  131 Wn. App. 406, 419, 120 P.3d 130 (2005).

Conway appealed the revocation of his license to operate an adult family home, and, after a

hearing, the ALJ determined that the appropriate remedy was to revoke all but one of Conway's

licenses.  *Id.* at 410, 413.  The DSHS Board of Appeals reversed the ALJ's substituted remedy

19

because the ALJ did not have the authority to decide the appropriate remedy. *Id.* at 413. The *Conway* court affirmed the Board's reversal. *Conway*, 131 Wn. App. at 410.

The case here is similar. RCW 59.30.040(10)(b) granted the ALJ at the OAH the authority to "[d]ecide whether the evidence supports the attorney general finding by a preponderance of the evidence." The OAH's Final Order professed to affirm MHDRP's notice of violation by ordering Rainier Vista to reimburse tenants the calculated overcharge totaling $35,240, while at the same time concluding that a reimbursement to each tenant who overpaid for the amount that tenant overpaid, totaling $88,445.77, was the appropriate remedy. There was no statutory authority for the OAH to act beyond determining whether the MHDRP's notice of violation was supported by a preponderance of the evidence. Therefore, we hold that the OAH acted without statutory authority when it imposed a remedy different from that found by the MHDRP in the Notice of Violation.

## CONCLUSION

We hold that (1) the term "actual utility costs," as it is used in RCW 59.20.070(6), prohibits a landlord from charging tenants a utility fee that exceeds the amount that the landlord was in fact charged by, or in fact paid to, the utility provider for providing the utility; (2) the MHDRP had discretion to investigate complaints and is required to consider the impact of the complained-of violations on the entire community; (3) Rainier Vista was not denied due process; and (4) the OAH exceeded its statutory authority when it imposed its own remedy by using a different

No. 47766-1-II

reimbursement calculation than that used by the MDHRP. Thus, we affirm the OAH's determination that Rainier Vista violated RCW 59.20.070(6), but we reverse the OAH's determination of the amount of the overcharge and remand for the OAH to determine whether the MHDRP's calculation of the overcharge is supported by a preponderance of the evidence.

_____
Lee, J.

We concur:

_____
Maxa, A.C.J.

_____
Melnick, J.